Murray M. SALZBERG, Meyer P. Gross and Morris H. Snerson, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

United States District Court
S. D. New York.
Sept. 28, 1959.

Jacob I. Goodstein, New York City, for plaintiffs (Jacob I. Goodstein and Benjamin Wm. Mehlman, New York City, Jacob H. Zamore, Brooklyn, N. Y., and Fred H. Krones, New York City, of counsel).

H. Neil Garson, Robert W. Ginnane, Washington, D. C., for Interstate Commerce Commission.

Arthur H. Christy, New York City, James H. Durkin, Robert A. Bicks, Washington, D. C., for the United States.

Before LUMBARD, Circuit Judge, and NOONAN and MURPHY, District Judges.

MURPHY, District Judge.

■ This is an action to set aside and to annul as unlawful, arbitrary and capricious a condition contained in a decision of the Interstate Commerce Commission dated May 2, 1958 approving the application of the plaintiffs for permission to acquire control of the St. Johnsbury and Lamoille County Railroad (St. Johnsbury). The condition required the plaintiffs to grant an option of indefinite duration to the Maine Central Railroad to purchase their stock in the St. Johnsbury at a price not in excess of twenty per cent more than plaintiffs paid for the stock, in the event that plaintiffs wished to abandon the line or dispose of their stock.

The St. Johnsbury operates a freight railroad extending about 96 miles from St. Johnsbury to Swanton, Vermont. Almost ninety per cent of its 1,000 shares of corporate stock currently outstanding is held by Eastern Magnesia Talc Co., Ruberoid Co., and L. A. Putnam, President of the St. Johnsbury.

For a number of years, the St. Johnsbury has been operating at an annual deficit and by 1955 it was in gross disrepair. Its two principal stockholders, Eastern and Ruberoid, had determined to expend no more capital for its improvement and considered abandoning a portion of the line that would presumably not interfere with their requirements as shippers along the line. These two shareholders, together with L. A. Putnam, offered their combined holdings totalling 882 shares for sale to the connecting carriers, Maine Central, the Central Vermont, and the Canadian Pacific Railroads, all three of whom declined. Subsequently, plaintiffs were approached and after a series of negotiations agreed to purchase the 882 shares at $100 per share.

Plaintiffs, who are stockholders in other railroads, filed their application for authority to acquire control of the St. Johnsbury with the Commission on August 14, 1956, pursuant to the provisions of 49 U.S.C.A. § 5(2)(a). Hearings were held and evidence taken on the plaintiffs' qualifications. The Maine Central appeared in opposition to their application and applied to acquire control on its own behalf. The applications were consolidated and further hearings conducted.

Plaintiffs' acquisition was and is opposed by Maine Central, a number of shippers along the route of the St. Johnsbury, and by representatives of the States of Vermont and Maine. Their objections are bottomed on the fear and suspicion that plaintiffs intend eventually to abandon the line in order to reap a large profit since, Maine Central claims, the line is worth as scrap many times what it is worth as a going concern.

On May 2, 1958, the I.C.C. published its decision, imposing the complained of condition in the following words:

"Accordingly, we will hereinafter approve the application of the Salzberg group, on condition, however, that they give Maine Central an option, irrevocable so long as the condition is effective, to purchase, subject to our approval all the stock of the St. Johnsbury hereafter acquired by them, at a unit price not in excess of 20 percent more than the amount paid therefor, or at such greater price as may be approved by this Commission as fair and equitable under the circumstances then existing, which option shall be exercisable only in the event that an abandonment of all or any part of the St. Johnsbury's line between Swanton and St. Johnsbury is proposed or that the Salzbergs, either collectively or individually, propose to dispose of their stock to parties other than themselves."

After their application for reconsideration had been denied, the plaintiffs commenced this action.

The exercise of authority and discretion of the I.C.C. to condition its approval of applications upon such reasonable and just terms as it deems necessary to protect the public interest is subject to review by the courts. See 5 U.S.C.A. § 1009(c) and, also, 49 U.S.C.A. § 17(9). This review, however, as the Supreme Court has stated "is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene." United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821.

In enacting the Administrative Procedure Act, Congress has charted the court's approach to problems of this nature. Section 10(e), 5 U.S.C.A. § 1009 (e), provides in pertinent part as follows: "So far as necessary to decision * * * the reviewing court shall * * determine the meaning or applicability of the terms of any agency action. It shall * * * (b) hold unlawful and set aside agency action, findings, and conclusions found to be * * * (5) unsupported by substantial evidence in any case subject to the requirements of Sections 7 and 8 or otherwise reviewed on the record of an agency hearing provided by statute."

With this statutory mandate in mind, we have examined those portions of the record submitted by plaintiffs and the report of the Commission. We discover, first, that the Commission has made no findings to support the imposition of the condition except to observe that "no human can accurately forecast the future." Secondly we find that the only evidence relating to the plaintiffs' intentions, while hardly sufficient to support the Commission's exercise of discretion, concerns (a) the unique scrap value of the railroad, (b) that H. E. Salzberg Co., Inc., a corporation in which the plaintiffs are the principal stockholders, is engaged principally in the business of salvaging railroad properties and equipment, (c) an admission by plaintiffs that they have scrapped railroads in the past, and (d) the opinion that unless the scrap value is considered it is just not good business to buy the St. Johnsbury line since its past or prospective earnings do not warrant the investment proposed by plaintiffs. Opposed to these facts is testimony that the Salzberg group has successfully operated short line railroads over a period of 25 years.

In evaluating the applications of plaintiffs and that of the Maine Central, the Commission concluded, "Of the two proposals before us, that of the Salzbergs is the most comprehensive. Both applicants concede that the St. Johnsbury must be rehabilitated if it is to continue operations. The Salzbergs have proposed a definite program of rehabilitation and have taken steps substantial in character to carry it through. They have allocated cash for this purpose, and they have purchased rail and other materials which have been delivered alongside the St. Johnsbury's track ready for use the in-

stant their application is granted. In contrast, the Maine Central proposes to approach the rehabilitation problem gradually and presently to make only the repairs necessary for the continued operation of the line at reduced speeds. Eventually it hopes that the earnings from the line would be sufficient to accomplish a first-rate rehabilitation program."

In granting its approval of plaintiff's application with the challenged condition, as set forth above, the Commission's decision had this to say, "The record is clear that the Salzbergs' proposal to improve the St. Johnsbury's road is much better for the carrier and more in the public interest than that of the Maine Central. They have unequivocally asserted that they will continue to operate the property, and there is no reason, and certainly no evidence other than mere speculation, to attribute to them any ulterior motives * * * [T]here can be no abandonment of a line of railroad without our permission. Every abandonment heretofore made by the Salzbergs on any of the properties controlled and operated by them has had such prior permission. It is inconceivable that the Salzbergs would acquire control and effect improvements at a total investment of more than $400,000 for the sole intent and purpose of dismantling the line."

On the basis of this record before the Commission, we hold that there was insufficient evidence to warrant imposition of the condition. As the Commission itself pointed out, "there is no reason and certainly no evidence" to substantiate the fear of abandonment expressed by Maine Central. We recognize that the mere fact that this court might not itself impose such a condition were it looking at the evidence de novo is not sufficient reason to upset the Commission's determination. The Commission is vested with discretion in making its decision and we may not upset that decision so long as it is supported by "substantial evidence." We do not find such support here.

Further, we find no support in the record before the Commission for choosing Maine Central as the only beneficiary of the option required to be granted by the plaintiffs. As plaintiffs point out, the Central Vermont and Canadian Pacific are also carriers connecting with the St. Johnsbury, and either of these companies might at some future time be interested in acquiring the railroad should plaintiffs desire to sell out.

Finally, we find no support in the record for the option purchase price set by the Commission of twenty per cent greater than the amount to be paid by the plaintiffs for the St. Johnsbury stock. Indeed, Commission counsel conceded at argument that this figure was nothing more than a random choice.

In reaching our decision, we do not decide whether, were there sufficient evidence present, the Commission would be authorized by 49 U.S.C.A. § 5(2) to impose the condition in the present case. Since we hold that the evidence cannot support the condition in any event, we need not reach this question of statutory construction.

Having concluded that the condition attached by the Commission is unjustified, the question remains whether to send the matter back to the Commission or merely to strike the condition and affirm the order in all other respects. The condition in question affects the ownership of the railroad and its future transfer. It imposes a restriction upon plaintiff's alienation of the property. In limiting plaintiff's choice of future purchasers and the price that they might be obliged to pay, the Commission hoped in some measure to insure the continued operation of the railroad regardless of plaintiff's conduct. In the absence of the condition, the Commission might well have chosen a method other than the unconditional approval of plaintiff's application to satisfy the need for continued railroad service in northern Vermont. In any case, the question is one that requires application of the Commission's expert knowledge and involves administrative judgment and discretion. We, therefore, hold that the case should be remanded to the Commission, which may

then grant plaintiff's application, or that of Maine Central, either one upon condition or otherwise, or may take such other action as is within its statutory authority. See Federal Power Commission v. Idaho Power Co., 1952, 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15.

The decision of the Commission is set aside and the case is remanded for further proceedings in accordance with this opinion.