CHARLES H. O'DONNELL, JR. ET AL. V.
ALFRED S. BASSLER ET AL.

[No. 8, September Term, 1980.]

*Decided February 12, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*James B. Dudley* for appellants.

*Thomas E. Lloyd* for appellees.

DAVIDSON, J., delivered the opinion of the Court.

In 1969 one of the respondents, Basslers Incorporated (owner), purchased approximately 504 acres of land located

in Howard County zoned R-40 (Residential, one family detached, one acre minimum lot size), a portion of which was used as a private airfield by approximately 15 private aircraft. On 6 September 1976, the owner applied to the Board of Appeals of Howard County (Board) under § 19.05 of the 1961 Howard County Zoning Regulations (1961 Zoning Regulations) [1] for a special exception use permit for a commercial aircraft landing field capable of accommodating 60 private aircraft.

As required by § 2.211 of the Howard County Code, the application included, among other things, a description of the intended use of the subject property and a site development plan showing the proposed development of that property. Before a hearing was held on the application, the Office of Planning and Zoning and the Planning Board recommended approval of the requested special exception use permit subject to certain specific conditions to be imposed by the Board. At the hearing the owner and several other witnesses testified in support of the application. Charles H. O'Donnell, Jr. and others (protestants) testified in opposition to the grant of the requested special exception use permit. In essence, they stated that the then existing use of the aircraft landing field by 15 aircraft created sufficient noise and disturbance to constitute a nuisance that interfered substantially with the use and enjoyment of their property.

On 31 December 1976, the Board filed a decision and order that stated in pertinent part:

---

1. § 19.05, then applicable, provided in pertinent part:

"The Board may approve in any District commercial aircraft landing fields and airports, provided the Board shall find that such use is essential or desirable to the public convenience and welfare."

Additionally, § 31, then applicable, provided in pertinent part:

"However, the application for permit shall not be approved where the Board finds the proposed . . . use . . . would menace the public health, safety, security, morals or general welfare, or would result in dangerous traffic conditions, or would jeopardize the lives or property of people living in the neighborhood."

504

"1. That a limited commercial aircraft landing field and airport is a use that is essential and desirable to the public convenience and general welfare of the people in Howard County.

. . .

5. That the petitioner's request, *if granted with reasonable conditions,* will not interfere with the peaceful enjoyment of people in their homes." (Emphasis added.)

The Board then granted the requested special exception use permit subject to 13 specified conditions. Eight of the conditions imposed were identical to those contained in the owner's application and site development plan.[2] The remaining five conditions imposed were additional to those contained in the owner's application and site development

---

2. These eight conditions, as set forth in the Board's opinion, are as follows:

. . .

"2. That the commercial airfield shall only be used by planes weighing less than six thousand (6,000) pounds.
3. That the use shall conform to the Site Plan and all other testimony and evidence introduced by the Petitioner.
4. That the aircraft landing field and strip shall remain in turf, and that the storage of aircraft shall be limited to the area off the runway as shown in the Plat filed and also be in turf.

. . .

7. That there shall be no instructional aircraft used on the subject airfield, nor student instruction.
8. That there shall be no air taxi service operated on the subject airfield, nor air freight service.
9. That there shall be no major or commercial maintenance operation on the subject property. Any maintenance greater than limited self-maintenance or emergency maintenance shall be considered a major maintenance operation.
10. That the permit granted shall apply only to the land outlined by Petitioner in Exhibit No. 7 and according to Petitioner's testimony at this hearing.
11. That as measured from the nearest residence, the noise emitted from the airport shall not exceed 45 dB(A) more than thirty (30) minutes per twenty-four (24) hours."

plan (additional conditions).[3] These additional conditions required, among other things, that the number of airplanes utilizing the proposed facility be reduced from 60 to 15, that the number of flights be limited to 15 flights per day, and that the proposed facility's use be limited to aircraft stored at the facility.

Thereafter, the owner made the changes necessary to conform the existing aircraft landing field to the site development plan. These changes included, among other things, "twisting the runway slightly to meet [a] 500 foot setback requirement ... shav[ing] a few humps off the cornfield and plant[ing] grass for the new parking area."

---

**3.** These five conditions, as set forth in the Board's opinion are as follows:

"1.  That the subject commercial aircraft landing field *shall be used by only fifteen (15) airplanes* for the first year and that the Petitioner may increase the capacity by two (2) planes each year to citizens of Howard County, up to a maximum capacity of twenty-five (25) airplanes.

. . .

5.  That gasoline may be sold in a limited capacity only to those people purchasing or leasing tie-down space.

6.  That the Petitioner *shall limit the airfield's use to only people who own aircraft stored at the Petitioner's airfield.*

. . .

12.  Based on the fact that a permit for a commercial airport has never been issued in Howard County, the Board of Appeals, after two years may, at its discretion, hold a public hearing to make a determination on the sufficiency and/or adequacy of the controls that have been placed in this Decision and Order to carry out its responsibilities. The costs for this hearing will be paid by the Board of Appeals.

The following condition is added:

13.  That the petitioner *shall limit the flights from this commercial airfield according to the following schedule:*

15 planes = 1 flight per day — first year
17 planes = 1.1 flight per day — second year
19 planes = 1.3 flights per day — third year
21 planes = 1.4 flights per day — fourth year
23 planes = 1.5 flights per day — fifth year
25 planes = 1.7 flights per day — sixth year

(Average of no more than above number of flights per day, take-off and landings, over any six month consecutive period)"
(Emphasis added.)

On 9 February 1977, the protestants appealed to the Circuit Court for Howard County. The owners cross appealed on the ground that the Board had no authority to impose the additional conditions.

On 3 October 1977, the 1961 Zoning Regulations were amended (1977 Zoning Regulations). As a result, commercial aircraft landing fields and airports were abolished as a special exception use. On 10 April 1978, at oral argument, the Circuit Court was advised of the existence of the 1977 Zoning Regulations.

In an opinion and order filed on 22 March 1979, the Circuit Court expressly noted that the 1961 Zoning Regulations "are the ones applicable in this case." It held, among other things, that the Board did not have the authority to impose the additional conditions. The Circuit Court rejected the Board's contention that, under the circumstances, the case should be remanded in order to permit the Board to decide whether the special exception use permit should be granted without the additional conditions. Instead, the Circuit Court determined that the grant of the requested special exception use permit "even without the conditions, would be supported by the evidence before the Board." Accordingly, the Circuit Court modified the Board's order by eliminating the additional conditions and affirmed the Board's order as modified.

The protestants appealed to the Court of Special Appeals. There they contended that the Court of Special Appeals should apply the 1977 Zoning Regulations in effect at the time of the appeal rather than the 1961 Zoning Regulations in effect at the time the special exception use permit was granted. In addition, they contended that the Circuit Court had erred in modifying and affirming the Board's order granting the special exception use permit rather than remanding the case to the Board.

The Court of Special Appeals applied the 1977 Zoning Regulations without determining whether the owners had obtained a vested right in the granted special exception use permit. That Court pointed out that § 120A of the 1977 Zoning Regulations provided that lawfully existing uses

could be continued [4] and concluded that because the special exception use permit "was validly granted under the 1961 Regulations," it could "continue despite the 1977 amendment" that abolished commercial aircraft landing fields as a special exception use. In addition, relying upon § 121D of the 1977 Zoning Regulations,[5] the Court of Special Appeals determined that the Circuit Court did not err in modifying and affirming the Board's order rather than remanding the case to the Board. In an unreported opinion, that Court affirmed the judgment of the Circuit Court. *O'Donnell v. Bassler,* No. 476, September Term, 1979, filed 8 January 1980.

The protestants filed a petition for a writ of certiorari that we granted.[6] We shall reverse the judgment of the Court of Special Appeals.

The central question presented is whether the law in effect at the time that a special exception use permit was granted or the law in effect at the time of the appeal is applicable. More particularly, the question presented is whether the law to be applied is the 1961 Zoning Regulations that permitted a commercial aircraft landing field at the time the special exception use permit was granted or the 1977 Zoning

---

4. § 120A provides in pertinent part:

"A non-conforming use is any lawful existing use, whether of a building or of a tract of land, which does not conform to the use regulations of the district in which it is located, either on the effective date of these regulations or as a result of any subsequent amendment thereto."

5. § 121D provides in pertinent part:

"1. Any person ... aggrieved by any decision of the Board of Appeals, may appeal to the Circuit Court for Howard County....

. . .

6. The [Circuit] Court *may modify,* reverse, or affirm, wholly or partly, or *may remand* for further consideration, any decision of the Board of Appeals." (Emphasis added.)

6. No. 476, September Term, 1979 consisted of two cases consolidated on appeal. *O'Donnell v. Bassler* concerned a special exception use permit for a private aircraft landing field. *O'Donnell v. Basslers Incorporated* concerned a special exception use permit for a commercial aircraft landing field.

The question presented in the petition was confined to issues related to *O'Donnell v. Basslers Incorporated.* There are no issues related to *O'Donnell v. Bassler* before us.

Regulations, in effect at the time of the appeal, that had abolished such a use.

An appellate court must apply the law in effect at the time a case is decided, provided that its application does not affect intervening vested rights. *County Council for Prince George's County v. Carl M. Freeman Assocs., Inc.,* 281 Md. 70, 76, 376 A.2d 860, 863-64 (1977); *Rockville Fuel & Feed Co. v. City of Gaithersburg,* 266 Md. 117, 127, 291 A.2d 672, 677 (1972). Generally, in order to obtain a vested right in an existing zoning use that will be protected against a subsequent change in a zoning ordinance prohibiting that use, the owner must initially obtain a valid permit. Additionally, in reliance upon the valid permit, the owner must make a substantial beginning in construction and in committing the land to the permitted use before the change in the zoning ordinance has occurred. *Steuart Petroleum Co. v. Board of County Comm'rs of St. Mary's County,* 276 Md. 435, 442-44, 347 A.2d 854, 859-60 (1975), *County Council for Montgomery County v. District Land Corp.,* 274 Md. 691, 707, 337 A.2d 712, 721 (1975).

The issuance of a permit that is invalidated upon direct judicial review, however, creates no vested right in an owner. *See City of Hagerstown v. Long Meadow Shopping Center,* 264 Md. 481, 494-96, 287 A.2d 242, 248-50 (1972); *Ross v. Montgomery County,* 252 Md. 497, 504-07, 250 A.2d 635, 639-41 (1969); *Town of Berwyn Heights v. Rogers,* 228 Md. 271, 280, 179 A.2d 712, 716 (1962). Thus, an owner who obtains an invalid permit "would derive no benefit, and whatever he might do in pursuance of this permission would be at his own risk and loss. . . ." *Lipsitz v. Parr,* 164 Md. 222, 227-28, 164 A. 743, 745-46 (1933). More particularly, an owner who obtains a permit and begins construction before the expiration of an appeal period proceeds at his own risk. *City of Hagerstown,* 264 Md. at 496, 287 A.2d at 250; *Lipsitz,* 164 Md. at 225-28, 164 A. at 745-46.

In order to determine whether the 1961 Zoning Regulations or the 1977 Zoning Regulations apply, we must initially decide whether the special exception use permit for

the commercial aircraft landing field was valid. The record shows that the Board granted the owner a special exception use permit for a commercial aircraft landing field subject to eight conditions identical to those contained in its application and site development plan and five that were additional to those that it submitted. The Circuit Court held, and the parties concede, that the Board had no authority to impose the additional conditions. In view of the parties' concession, we shall assume, without deciding, that the special exception use permit granted by the Board was invalid.

The Circuit Court, however, directed the elimination of the invalid additional conditions and affirmed the Board's order granting the special exception use permit as modified. Under these circumstances, we must next decide whether the Board's order granting the special exception, as modified by the Circuit Court, constituted a valid special exception use permit.

It is a fundamental principle of administrative law that a reviewing court should not substitute its judgment for the expertise of the administrative agency from which the appeal is taken. *Courtney v. Board of Trustees of the Md. State Retirement Systems,* 285 Md. 356, 362, 402 A.2d 885, 889 (1979); *Mayor of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 394-96, 396 A.2d 1080, 1089 (1979); *Jobar Corp. v. Rodgers Forge Community Ass'n, Inc.,* 236 Md. 106, 120, 202 A.2d 612, 620 (1964); *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 230, 156 A.2d 657, 661-62 (1959), *appeal dismissed,* 363 U.S. 419, 80 S. Ct. 1257 (1960). This principle underlies the rule that if an administrative function remains to be performed after a reviewing court has determined that an administrative agency has made an error of law, the court ordinarily may not modify the agency order. Under such circumstances, the court should remand the matter to the administrative agency without modification, *South Prairie Constr. Co. v. Local No. 627, IUOE,* 425 U.S. 800, 805-06, 96 S. Ct. 1842, 1844-45 (1976); *NLRB v. Food Employees Local 347,* 417 U.S. 1, 9-11, 94 S.

510

Ct. 2074, 2079-80 (1974); *FPC v. Idaho Power Co.,* 344 U.S. 17, 19-21, 73 S. Ct. 85, 87 (1952); *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 145, 60 S. Ct. 437, 442 (1940); *Pistorio v. Zoning Bd. of Howard County,* 268 Md. 558, 567-70, 302 A.2d 614, 619 (1973); *Montgomery v. Board of County Comm'rs for Prince George's County,* 256 Md. 597, 604, 261 A.2d 447, 450-51 (1970); *Board of County Comm'rs for Prince George's County v. Brown,* 253 Md. 632, 639-42, 253 A.2d 883, 888-89 (1969); *Board of County Comm'rs for Prince George's County v. Ziegler,* 244 Md. 224, 228-29, 223 A.2d 255, 257-58 (1966); *Miller v. Kiwanis Club of Loch Raven, Inc.,* 29 Md. App. 285, 298-99, 347 A.2d 572, 580 (1975). *See FCC v. National Citizens Comm. for Broadcasting,* 436 U.S. 775, 793 n.15, 98 S. Ct. 2096, 2111 n.15 (1978); *Texas & Pacific Ry. v. ICC,* 162 U.S. 197, 213, 16 S. Ct. 666, 682 (1896).[7] Of course, the court need not remand if the modification is so minor as to make remand inappropriate, *Idaho Power Co.,* 344 U.S. at 20, 73 S. Ct. at 87; *Board of County Comm'rs for Prince George's County v. Meltzer,* 239 Md. 144, 156-57, 210 A.2d 505, 512 (1965), or if remand is otherwise futile. *Hooper v. Mayor of Gaithersburg,* 270 Md. 628, 637, 313 A.2d 491, 496 (1974); *Chevy Chase Village v. Montgomery County Council,* 258 Md. 27, 40, 44, 264 A.2d 861, 867-68, 869-70 (1970); *Williams v. Washington Metropolitan Area Transit Comm'n,* 415 F.2d 922, 939-43 (D.C. Cir. 1968), *cert. denied,* 393 U.S. 1081, 89 S. Ct. 860 (1969). Finally, if an

---

**7.** Courts in other jurisdictions have consistently applied this principle to a variety of factual situations. Public Utility District No. 1 v. FPC, 242 F.2d 672, 683 (9th Cir. 1957); Washington Mut. Sav. Bank v. FDIC, 347 F. Supp. 790, 800 (W.D. Wash. 1972), *aff'd,* 482 F.2d 459 (9th Cir. 1973); Midwest Truck Lines, Ltd. v. ICC, 269 F. Supp. 554, 567 (D.D.C. 1967); Texas American Asphalt Corp. v. Walker, 177 F. Supp. 315, 322-23 (S.D. Tex. 1959); Salzburg v. United States, 176 F. Supp. 867, 870 (S.D. N.Y. 1959); Civil Serv. Comm'n of Tucson v. Mills, 23 Ariz. App. 499, 534 P.2d 430, 433-34 (1975); English v. City of Long Beach, 35 Cal.2d 155, 159-60, 217 P.2d 22, 24-25 (1950); Arterburn Convalescent Home, Inc. v. Committee on State Payments to Hospitals, 176 Conn. 82, 86, 405 A.2d 48, 50 (1978); State, ex rel. State Bd. of Tax Comm'rs v. Marion Superior Court, 392 N.E.2d 1161, 1166 (Ind. 1979); Swalbach v. State Liquor Auth., 7 N.Y.2d 518, 526-27, 166 N.E.2d 811, 815-16, 200 N.Y.S.2d 1, 7-8 (1960); Pennsylvania State Athletic Comm'n v. Bratton, 177 Pa. Super. Ct. 598, 605-08, 112 A.2d 422, 425-26 (1955); Straub v. Department of Public Welfare, 31 Wash. 2d 707, 724, 198 P.2d 817, 826 (1948).

administrative function remains to be performed, a reviewing court may not modify the administrative agency's action even when a statute provides that the court may "affirm, modify or set aside" because a court may not usurp administrative functions. *Food Employees Local 347, 417,* U.S. at 3, 94 S. Ct. at 2077; *Idaho Power Co.,* 344 U.S. at 21, 73 S. Ct. at 87; *Pottsville Broadcasting Co.,* 309 U.S. at 144, 60 S. Ct. at 442; *Federal Radio Comm'n v. General Electric Co.,* 281 U.S. 464, 467, 50 S. Ct. 389, 390 (1930).

In *Federal Power Commission v. Idaho Power Co.,* 344 U.S. 17, 73 S. Ct. 85 (1952), a case involving facts strikingly similar to those in the instant case, the United States Supreme Court clearly articulated the principles stated above. There, a privately owned public utility applied to the Federal Power Commission (FPC) for a license to construct and operate a hydroelectric project. After the FPC granted the requested license subject to certain conditions, the private utility appealed. The United States Court of Appeals for the District of Columbia Circuit held that the FPC had no authority to attach the conditions. It entered a judgment that the FPC's order "be modified" by striking the conditions and that the order, as thus modified, be affirmed. The Supreme Court reversed, stating:

> "It is the Commission's judgment on which Congress has placed its reliance for control of licenses. See §§ 6, 10(a), 10(g). When the court decided that the license should issue without the conditions, it usurped an administrative function. There doubtless may be situations where the provision excised from the administrative order is separable from the remaining parts or so minor as to make remand inappropriate. *But the guiding principle, violated here, is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration.* See *Federal Communications Commission v. Pottsville Broadcasting Co.,* 309 U.S. 134; *Federal Trade Commission v. Morton Salt Co.,* 334 U.S. 37.

The Court, it is true, has power 'to affirm, modify, or set aside' the order of the Commission 'in whole or in part.' § 313(b). But that authority is not power to exercise an essentially administrative function. See *Ford Motor Co. v. Labor Board*, 305 U.S. 364, 373-74; *Siegel Co. v. Federal Trade Commission*, 327 U.S. 608. The nature of the determination is emphasized by § 10(a) which specifies that the project adopted 'shall be such as in the judgment of the Commission will be best adapted to a comprehensive plan ... for the improvement and utilization of water-power development, and for other beneficial public uses.' Whether that objective may be achieved if the contested conditions are stricken from the order is an administrative, not a judicial decision." [*Idaho Power Co.*, 344 U.S. at 20-21, 73 S. Ct. at 87 (emphasis added) (footnote omitted).]

Applying these principles to the instant case produces a clear result. Here the County Council of Howard County entrusted the determination of whether special exception use permits should be granted to the expertise and judgment of the Board. Under the 1961 Zoning Regulations, the Board was authorized to grant special exception use permits for commercial aircraft landing fields. In exercising this function, the Board was required to "find that such use is essential or desirable to the public convenience and welfare," § 19.05 of the 1961 Zoning Regulations, and that it would not "menace the ... general welfare." § 31 of the 1961 Zoning Regulations. Thus, the grant of the special exception use permit was an administrative, not a judicial, function. Only the Board had authority to issue such permits; the Circuit Court did not.

The Circuit Court decided that the Board had exceeded its authority by imposing the additional conditions, and had, therefore, committed an error of law. However, the Circuit Court rejected the Board's contention that the case should be remanded in order to permit the Board to decide whether the

special exception use permit should be granted without the additional conditions. Instead, the Circuit Court modified the Board's order granting the special exception use permit by eliminating the additional conditions that required, among other things, that the number of aircraft authorized to utilize the proposed facility be reduced from 60 to 15, that the number of flights be limited to 15 per day, and that the proposed facility's use be limited to aircraft stored at the facility. Although these conditions were integral and substantial factors in the Board's decision to grant the special exception use permit, the Circuit Court affirmed the Board's order granting the special exception use permit as modified rather than remanding the case to the Board.

When the Circuit Court took this action, it, in essence, determined that based on the evidence of record, the special exception use permit should be granted for a facility to be utilized by 60 aircraft with unlimited flights per day and without the restriction that the proposed facility's use be limited to aircraft stored there. The record contained some evidence to support the grant of the special exception use permit as modified by the Circuit Court. However, the record also contained evidence to show that the then existing use of the airfield by 15 aircraft created sufficient noise and disturbance to constitute a nuisance that interfered substantially with the use and enjoyment of the protestants' property. Thus, the question whether the special exception use permit as modified by the Circuit Court should be granted was fairly debatable.

It was the Board's function to use its expertise and judgment to determine whether the special exception use permit should have been granted for a facility to be utilized by 60 aircraft with unlimited flights per day and without the restriction that the proposed facility's use be limited to aircraft stored there. Making the requisite findings that such a proposed use was essential or desirable to the public convenience and welfare, and not a menace to the general welfare, was an administrative function. As a result, when the Circuit Court modified the Board's order, it deprived the

Board of its right to exercise its expertise and judgment in determining whether the special exception use permit should have been granted without the additional conditions. In short, the Circuit Court substituted its judgment for that of the Board and usurped an administrative function.

Under these circumstances, the Circuit Court erred, notwithstanding the express provision of § 121D.6 of the 1977 Zoning Regulations that permits the Circuit Court to "modify" the Board's order. The Circuit Court's power was limited to determining whether the Board had exceeded its authority by imposing the additional conditions and to determining whether the Board had, therefore, committed an error of law. Once the Circuit Court determined that the Board had committed an error of law, the Circuit Court should have remanded the matter to the Board without modification because an administrative function remained. Because the Circuit Court violated fundamental principles of administrative law, the Board's order granting the special exception, as modified by the Circuit Court, did not constitute a valid special exception use permit.

The special exception use permit obtained by the owner was not valid as originally granted by the Board or as modified by the Circuit Court. The owner derived no benefit at all from its invalid permit and proceeded at its own risk when it made the changes necessary to conform the aircraft landing field to the site development plan before the expiration of the appeal period. Therefore, the owner did not obtain a vested right in the special exception use permit granted under the 1961 Zoning Regulations. Under these circumstances, the 1977 Zoning Regulations are applicable. Because the special exception use permit was not validly granted, the existing commercial aircraft landing field was not a lawfully existing use that could be continued under the 1977 Zoning Regulations.

The Court of Special Appeals erred in determining that because the special exception use permit "was validly granted under the 1961 Regulations," it could continue as a lawfully existing use under the 1977 Zoning Regulations.

That Court further erred in determining that the Circuit Court had authority to modify and affirm the Board's order rather than remanding the case to the Board. However, because under the 1977 Zoning Regulations the Board no longer has the authority to grant special exception use permits for commercial aircraft landing fields, a remand to the Board at this time would be futile. Accordingly, we shall reverse without directions to remand the case to the Board.

> *Judgment of the Court of Special Appeals reversed.*
>
> *Case remanded to that court with directions to reverse the judgment of the Circuit Court for Howard County and to remand the case to that court with directions to reverse the decision of the Board of Appeals of Howard County.*
>
> *Respondents to pay costs.*