**CENTRAL TRUST COMPANY v CINCINNATI (city)**

Ohio Appeals, 1st Dist, Hamilton Co

No 5544. Decided Feb. 6, 1939

Paxton & Seasongood, Cincinnati, for appellee.

John D. Ellis, Cincinnati, and Ed F. Alexander, Cincinnati, for appellant.

## OPINION

By ROSS, PJ.

This is an appeal on questions of law and fact from a judgment of the court of common pleas of Hamilton county.

Plaintiff in the petition alleges the ownership of certain property now zoned by the defendant as Residence "D". The prayer of the petition is that the defendant be enjoined from "interfering in any way directly or indirectly with the use of plaintiff's premises for business purposes, such as would be permitted in a Business "A" District under the zoning ordinance of the City of Cincinnati", and from enforcing said zoning ordinance so far as the same applies to place and keep Plaintiff's property in Residence "D" District or any other residence district."

In the answer, the city after admitting certain matters such as ownership and the location of the adjacent zones, sets up the defense that the plaintiff had failed to exhaust the remedies under the provisions of city ordinances, providing:

"Sec. 1330-2. **Appeals.** Appeals to the Board may be taken by any person or by any officer, board or commission of the municipality affected by any grant or refusal of a building permit or by any other decision of the Commissioner of Buildings, where such decision is based upon the requirements of this ordinance. Such appeal shall be filed with the Board within thirty (30) days from the ruling or decision of the Commissioner of Buildings appealed from. The Board may, in conformity with the provisions of this ordinance, reverse or affirm, wholly or partly, or may modify the order requirement, decision, ruling or determination appealed from."

"Sec. 1330-9. **Cases of Hardship.** Where the strict application of any provision of the Zoning Code would result in undue hardship upon the owner of specific property, or where there is a reasonable doubt as to any provision of this ordinance or the Building Zone Map as applied to such property, the Board shall have the power to modify such strict application, or to interpret the meaning of this ordinance so as to relieve such hardship; provided that such modification and interpretation shall remain in harmony with the general purpose and intent of this ordinance, so that the public health, safety, convenience, comfort, prosperity and general welfare will be conserved and substantial justice done."

Defendant, in its answer further alleges that no permit has been requested by the plaintiff.

In the reply, plaintiff denies it is under any duty to request a permit, and that to file an appeal would be a useless and idle ceremony, and that it is unnecessary to request a permit. Plaintiff further alleges that it has no remedy under the non-conforming use ordinances permitting modification of the zoning requirements in favor of an extension of a non-conforming use or a substitution for a non-conforming use, in that its proposed use of the premises involves both an extension and substitution for the present use.

In the petition, plaintiff states that it "had planned" that there should be erected on said premises a new one story stone front building, which, when completed, would be used as an office and show room for a decorator, who would use a garage now on the rear of the premises for a store room.

It is further alleged that the property is too small to permit the erection of an apartment building permitted by Residence "D" zoning.

The evidence introduced develops that the plaintiff's property is located on the north side of Locust Street in the City of Cincinnati, that on the north part thereof a commercial garage of a fire resisting construction had for some time been erected; that a portion of the south part of such lot, fronting on Locust Street, was occupied by a small dilapitated frame building and the remaining portion is vacant. A narrow street or alley passes the plaintiff's property on the west and upon the east side a vacant lot 78 feet in width intervenes between the plaintiff's property and Victory Parkway Boulevard.

The present zoning brings two zones into juxtaposition on a line running north and south in Pennington Street, upon which plaintiff's property abuts on the east. To the west of this line is Business "A" District; to the east of this line is Residence "D" district. The two districts stretch across Locust Street between parallel lines to the south for one-half of a city block, to where a Business "C" District joins these districts on the south. The two districts extend to the north one-half a city block, where they join a Residence "C" District.

A review of the evidence indicates that all of these districts conform to an intelligent application of zoning principles to the character of the property and improvements. The lines are not run along arbitrary or capricious courses. The dividing line between Business "A" district and Residence "D" district follows the course of Pennington Street to south of Locust, although in Locust Street the Residence "D" district west line is caused to jog to the west slightly, and then runs due south. This does not affect plaintiff's property except to extend Residence "D" district south of Locust Street farther west than this District is extended on the north side of Locust, where plaintiff's property is located.

If then the plaintiff's application is granted, it would mean that the Business "A" district to the west of plaintiff's property would be extended east into Residence "D" district to the extent of the dimensions of plaintiff's lot.

It is obvious that in the process of zoning that the several districts zoned according to limitations upon the use of property for residence, business, or semi-business purposes must have definite boundaries. It is also obvious that the property abutting upon the boundaries must be affected to some degree by the proximity of the property to the boundary of the zone. Such a situation is inevitable unless the whole of a community is to be placed in one unrestricted zone. Thus, as has become so manifest one man's property may be depreciated to a point of complete devaluation by reason of the use of his neighbor's property unhampered by any limitation. It can readily be seen that few persons would welcome such a situation of insecurity. Courts have, therefore, consistently refused to interefere with the sound discretion of those upon whom rest the responsibility of fixing the

boundaries of zones unless the exercise of this function indicates a wholly capricious, arbitrary, and unreasonable action, entirely foreign to any consideration involving the safety, health, morals, or welfare of the public. Village of Euclid v Realty Co., 272 U. S. 365. Nectow v City of Cambridge et al, 277 U. S., 183. **Pritz v Messer, et, 112 Oh St 628. Mehl v Stegner, etc., et, 38 Oh Ap 416.**

The fact, therefore, that the property adjacent to that of plaintiff's property is used for purposes consistent with the business zones in which such adjacent property is located can have no argumentative force in sustaining the claim of plaintiff that its property must also be included in a business zone on which it abuts.

There may be cases in which the application of a zoning limitation produces such unwarranted hardships that the enforcement of the limitation results in a confiscation of property. It is the claim of the plaintiff that such is the effect of the zoning provisions in the instant case. In such case, the ordinances of the city before quoted provide a remedy which the property owner must first pursue before applying to the courts. Such course was followed successfully in Mehl v Stegner, etc., et, supra. It was not followed in the instant case and, therefore, the position of the plaintiff is unlike that of the property owner in the Mehl case, and the relief granted there may not be extended here.

The plaintiff in the instant case has failed to exhaust the remedies permitted by law, and equity may not intervene until this is done.

But the plaintiff relies upon the case of Village of Euclid v Realty Co., supra. The first paragraph of the syllabus is:

"A suit to enjoin the enforcement of a zoning ordinance with respect to the plaintiff's land, need not be preceded by any application on his part for a building permit. or for relief under the ordinance from the board which administers it, where the gravamen of the bill is that the ordinance of its own force operates unconstitutionally to reduce the value of the land and destroy its marketability, and the attack is not against specific provisions but against the ordinance in its entirety."

If this rule has the general application which the plaintiff in this case claims includes the specific instance involved, then, as hereinbefore pointed out, almost no zone would stand, for in most every case where a business zone abuts a residence zone, there must be present a direct effect upon the border property, and if there are to be no border properties, there can be no zone divisions, and, consequently, no zones.

If the plaintiff is then relying upon the Village of Euclid v Realty Co., supra, it must be taken for granted that it is attacking the zoning ordinance in its entirety, in that the plaintiff must assert that "the gravamen of the bill is that the ordinance of its own force operates unconstitutionally to reduce the value of the land and destroy its marketability, and the attack is not against specific provisions, **but against the ordinance in its entirety.**" Certainly, this cannot be the position of the plaintiff in the instant case. If it is, then the evidence fails to sustain the application of any such sweeping charge against the ordinance in "its entirety". The question presented to the court appears defined on page 386 of the opinion in the Village of Euclid case:

"It is not necessary to set forth the provisions of the Ohio Constitution which are thought to be infringed. The question is the same under both constitutions namely, as stated by appellee: Is the ordinance invalid in that it violates the constitutional protection 'to the right of property in the appellee by attempted regulations under the guise of the police power, which are unreasonable and confiscatory?' "

Again, on pages 388 and 389, the Court say:

"Here, however, the exclusion is in general terms of all industrial establishments, and it may thereby happen that not only offensive or dangerous industries will be excluded, but those which are neither offensive nor dangerous will share the same fate. But this is no more than happens in respect of many practice-forbidding laws which this Court has upheld although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. Hebe Co. v Shaw, 248 U. S. 297, 303; Pierce Oil Corp. v City of Hope, 248 U. S. 498, 500. The inclusion of a reasonable margin to insure effective enforcement, will not put upon a law, otherwise valid, the stamp of invalidity. Such laws may also find their justification in the fact that, in some fields, the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some industries of an innocent character might fall within the prescribed class. It can not be said that the ordinance in this respect 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.' "

On page 395 of the opinion, the Court distinguishes an attack generally upon the ordinance from a claim of specific local injustice and confiscation. If then, the action is predicated upon a general attack it fails for lack of evidence sustaining the right of a court of equity to intervene and overrule the discretion reposed in the zoning authority. If the attack, as it evidently is. is a charge of specific personal grievance, caused by the application of a perfectly legal ordinance to a particular tract, then the plaintiff has failed to exhaust the remedies offered it in legal channels, and it has no position in this court, requiring it to act in its behalf.

In the pleadings and the evidence, it is asserted more or less definitely the purpose for which the plaintiff's lot is to be used. That purpose appears to be rather innocuous. The building proposed, however, does not qualify within the limitations of a residence "D" district. The difficulty here is apparent. The plaintiff states that its purchaser plans to use the lot for this sort of a building. But will he adhere to his present plan? If the injunction against the application of the ordinance is entered, as requested, that is in general terms forbidding the zoning authorities from prohibiting or interfering with the use of the property except for uses forbidden by a business "A" district, he will not be bound to follow his plans, but may use the property for any business "A" purpose, say for a filling station. This illustrates the wisdom of the rule requiring a positive declaration of the proposed use, binding upon the applicant, which the reviewing authority may consider in connection with general location of the property in its setting. Under such circumstances, a court may intelligently consider the situation of the plaintiff, and it may then determine that he is entitled to relief. The instant presentation offers this Court no such opportunity, and the prayer for injunction is denied and the petition dismissed.

HAMILTON & MATTHEWS, JJ., concur.