DAMPMAN *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL., AND STEINMETZ ET UX., ETC.

[No. 268, September Term, 1962.]

*Decided April 5, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Douglas H. Gordon,* with whom was *C. Rider Brandau, Jr.,* on the brief, for appellant.

282

*John A. Dewicki, Assistant City Solicitor* and *Charles Mindel,* with whom were *Francis B. Burch, City Solicitor* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

From a judgment of the Baltimore City Court affirming an order of the Board of Municipal Zoning Appeals, which permitted the extension of a non-conforming commercial use in a residential area, appellant appeals.

The nine hundred block of Tyson Street is an attractive area of residences located in the business district of Baltimore, and heavily surrounded by commercial establishments. Originally, this area was zoned commercial and was generally in a dilapidated condition. In 1953, an organization known as the Tyson Street Association was successful in getting the nine hundred block zoned residential, and its members have proceeded to remodel the residences located on this street into attractive city homes, retaining the characteristics of the original architectural style.

Mr. and Mrs. William Steinmetz, two of the appellees, own 903 Tyson Street. When it was originally purchased by Mrs. Steinmetz in 1946, prior to her marriage, it was located in a first commercial use district. She proceeded to rehabilitate the premises and has used it since that time as a studio for the design and sale of jewelry, and the designing of showrooms and offices. When the property on this street was rezoned in 1953 to residential, her business constituted a non-conforming use of the premises. However, her property conforms to the general scheme and character of the neighborhood.

These appellees also own 220 West Read Street, purchased by them in 1955. This property is zoned first commercial. They use it as a residence and in conjunction with the Tyson Street property as a studio for the design and manufacture of jewelry. The rear, or eastern, line of 903 Tyson Street runs along a part of the western side line of 220 West Read Street, about the middle of the back yard of the Read Street property. Between the rear of the 903 Tyson Street building and the rear line of the lot on which it is built, there is an open space eight feet

four inches long. Mr. and Mrs. Steinmetz applied for a permit to erect a second story addition to the Tyson Street property, twelve feet wide and twenty-two feet, one inch long, to be supported on steel or masonry piers, for the purpose of expanding their business space. This would result in its covering the eight feet four inches in back of 903 Tyson, and extending into the back of the Read Street Property. The building inspection engineer refused their application because it involved a commercial use of the residentially zoned eight feet four inches of the yard of 903 Tyson Street. The owners then applied for and received a hearing on March 27, 1962, before the Board of Municipal and Zoning Appeals.

At this hearing, opposition to this request for this permit in the nature of a special exception was presented by the appellant, the non-residing owner of 901 Tyson Street, and by letter, objections were made by the director of the Baltimore Urban Renewal and Housing Agency. The vice-president of the Mt. Vernon Improvement Association also testified in opposition to the special exception. The gist of the opposition was that the proposed improvement would block off light and air, that there would be excessive lot coverage, and that such encroachments on a residential area would contribute severely to blight. On the other hand, the appellees produced three neighboring property owners, one being the president of the Tyson Street Association. In addition, they produced letters from the owners of fifteen Tyson Street property owners. All stated they had no objection to the proposed alterations. The Board approved the application for the addition. On appeal the Baltimore City Court affirmed the Board's decision on the ground that the proposed addition was "incidental" to the present use of the property, and the granting of such an extension was within the discretion of the Board under Section 14 (b) of Ordinance No. 711, the zoning ordinance of Baltimore City.

The question presented on this appeal from that court is did the Zoning Board exceed its powers in granting the special exception which permitted the extension of a commercial use in a residentially zoned area?

The authority under which the Board purported to act in

granting the special exception is Section 14 (b) of the zoning ordinance. That section provides that after public notice and hearing, subject to the provisions of Section 35 (j), the Board may permit, where otherwise excluded or limited—

"* * *

"(b) a use of the same classification, necessary or incidental to a non-conforming use now existing in a first commercial or in a residential use district or in a residential and office use district within fifty feet from such existing non-conforming use, provided such fifty foot measurement shall not extend across a street or alley; * * *."

Section 35 (j) provides that the addition must not be detrimental to the health, safety or welfare of the community. The lower court found that although the addition was not necessary, it was incidental to the non-conforming use.

It thus appears that this case presents substantially no conflict as to fact but merely a question of law involving the construction of the zoning ordinance with reference to special exceptions.

Appellant relied heavily on the case of *Cleland v. City of Baltimore,* 198 Md. 440, 84 A. 2d 49, in his brief and oral argument. We agree that that case involved an analogous situation to the one presented here. There, three doctors made application for permission to maintain a parking lot for their own and their employees' automobiles next to the building in which they had their offices. The area was zoned residential but their building was an established non-conforming use. Such a parking lot would have been an extension of that non-conforming use. The Board of Municipal and Zoning Appeals, acting under the provisions of Section 12 (b) (Section 12 (b) being the predecessor of the present Section 14 (b) of the zoning ordinance), granted the application, and this action was affirmed by the Baltimore City Court. On appeal this Court reversed, finding that the proposed use was neither necessary nor incidental and was only for the convenience of the applicants. At page 444 of 198 Md. we said:

"This court has consistently held that special exceptions will never be granted to gratify mere convenience, that there must be a necessity, and that necessity must be so urgent, and the facts so extraordinary as to require the withdrawal of that particular case from the application of the accepted rule. That accepted rule is the division made in the zoning ordinance for various classes of use districts. It is part of a general plan which is not intended to be changed except in cases of urgent necessity."

The judge below, in this case, properly recognized that there was no urgent necessity for the special exception, yet he did find that the proposed exception was "incidental" to the present non-conforming use, and that this met the disjunctive standard of "necessary or incidental" as set out in Section 14 (b) of the zoning ordinance. With this finding we disagree.

Ordinarily there is a distinction between a variance and an exception. This is true in many of the counties of this state. An exception is usually granted where a specific use is permitted by the legislative body in a given area if the zoning plan is conformed to and there is no adverse effect on the neighborhood. There is usually no necessity for showing undue hardship. See *Oursler v. Board of Zoning Appeals,* 204 Md. 397, 104 A. 2d 568. On the other hand, variances are usually given only on the showing of undue hardship. *Montgomery Co. v. Merlands Club,* 202 Md. 279, 96 A. 2d 261. In Baltimore City there appears to be no distinction between the two terms (see *Baltimore v. Sapero,* 230 Md. 291, 186 A. 2d 884), and the City zoning ordinance does not specify what uses may be permitted within certain zoned areas as exceptions, as do many of the county ordinances. In the City, the existence of unnecessary hardship (to the property owner) usually justifies the granting of an exception. The determination of unnecessary hardship is whether the applicable zoning restriction, when applied to the property in the setting of its environment, is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private ownership. *Marino v. City of Baltimore,* 215 Md. 206, 216-217, 137 A. 2d 198.

In *Heath v. Mayor & C. C. of Baltimore,* 190 Md. 478, 58 A. 2d 896, this Court said, at page 483 of 190 Md.:

"The need to justify the exception must be real and substantial. If an exception to the general rule is permitted for reasons that are not urgent and substantial, but for mere convenience, then a provision of the ordinance for an exception might cease to be such and, in practice, become the rule."

The statute in requiring that the use be "incidental" does not, we think, contemplate a major addition to or a major expansion of the nonconforming use, but rather one appertaining, subordinate or casual thereto.

Nor is the alternate requirement of the statute, that the need be real and substantial, established. No evidence was introduced to show that the appellees need the exception in order to remain in business, nor why they could not extend their Read Street property within the commercial area in order to provide more working room. From the record it appears that the proposed exception would be only a convenience to Mr. and Mrs. Steinmetz, and did not involve an unnecessary hardship to them. There was clearly no evidence which tended to show that the applicable zoning restriction when applied to this property was so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private ownership. *Marino v. City of Baltimore, supra.* The late Judge Eli Frank, in the case of *Cullen v. Mayor & C. C. of Baltimore,* reported in the Daily Record, May 15, 1943, set out the proper standard when he said:

"The result of the authorities would seem to be that in exercising the power to vary the application of zoning restrictions in order to permit the invasion of a residential district by a business use, the guiding standard of the zoning authorities must be the public need or the public welfare in most cases to the subordination of the selfish interests of the owner or occupant of the property for which the variance is sought."

The fact that most of the property owners in the area did not

protest the exception does not of itself show that the exception would be for the public welfare. In the light of the authorities referred to, and particularly that of the *Cleland* case, which was a far stronger case for the granting of the special exception, we hold that the judgment of the court below affirming the order of the Board must be reversed because the action of the Board was in a legal sense arbitrary and capricious.

> *Judgment reversed, costs to be paid by the appellees, William Steinmetz and wife.*