734 A.2d 227

# BELVOIR FARMS HOMEOWNERS ASSOCIATION, INC.

v.

## John C. NORTH, II, Chairman Chesapeake Bay Critical Area Commission.

**No. 159, Sept. Term, 1998.**

Court of Appeals of Maryland.

Aug. 2, 1999.

---

Sager A. Williams, Jr. and Charles F. Delavan (Eileen E. Powers, Blumenthal, Delavan & Williams, P.A., on brief), Annapolis, for petitioner.

Marianne D. Mason, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Annapolis, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL, and ROBERT L. KARWACKI (retired, specially assigned), JJ.

CATHELL, Judge.

Belvoir Farms Homeowners Association, Inc., petitioner, appeals from the decision of the Circuit Court for Anne Arundel County, which, upon a Petition for Judicial Review filed by respondent John C. North, II, Chairman of the Chesapeake Bay Critical Area Commission (Commission), reversed the findings and conclusions of the Anne Arundel County Board of Appeals (Board) granting petitioner a variance from critical area zoning regulations. Petitioner presents four questions in its Petition for a Writ of Certiorari:

1. Is the "unwarranted hardship" criterion for zoning variances to critical area standards, set forth in COMAR

21.01.11.01(A)(1), the same as the traditional "unnecessary hardship" criterion for use variances?

2. Did the Critical Area Commission's promulgation of the "unwarranted hardship" criterion in COMAR 21.01.11.01(A)(1) exceed the Commission's authority under Title 8, subtitle 18 of the Natural Resources Article of the Annotated Code of Maryland, because the criterion conflicts with other State law?

3. In evaluating a variance application under the "rights commonly enjoyed" and "special privilege" criteria, set forth in COMAR 21.01.11.01(A)(2) & (3), is it permissible to compare the variance proposal to uses or property in the critical area not developed with a variance, including uses or property developed prior to adoption of the critical area law?

4. Is an administrative board's determination of whether a zoning applicant meets the critical area criteria for a variance, including the "unwarranted hardship" criterion, a question of fact or a mixed question of fact and law? [1]

## I. Facts

We shall summarize the facts briefly. Belvoir Farms is a ninety-lot subdivision in Anne Arundel County. Four of these lots are located in the Chesapeake Bay Critical Area within a stretch of land alongside Maynadier Creek. The property within the development that abuts the water, some of which is open space and a recreation area, is now owned by petitioner, the development's community association. In 1986, the community's developer built a private, 200 foot pier off one of the community-owned open space areas.

Subsequently, the Board granted petitioner a special exception to operate a "community pier" at the subject site and a variance to permit more than the four boat slips allowed by the critical area regulations that impose a limit on the number

---

1. Questions 1 and 4 assume certain facts that we do not accept. Accordingly, we have rephrased the questions.

of boat slips. A variance to reduce the size of a common driveway also was granted. The issues before this Court relate only to the grant of the variance that allows petitioner to build fourteen more boat slips than permitted by the critical area regulations.[2]

---

**2.** The Court of Special Appeals noted in *Chester Haven Beach Partnership v. Board of Appeals*, 103 Md.App. 324, 335–36, 653 A.2d 532, 538 (1995), a problem with using variance procedures to remove conditions attached to conditional uses:

> The Board noted that, in addition to the conditional use—or really, in order to qualify to apply for the conditional use—the applicants had to get a variance from the six unit per cluster condition and from the provisions of the density percentages, and additional variances from the conditions for which the ordinance required satisfaction in order to be entitled to a conditional use. In other words, the Board perceived, correctly, that the subject project could not meet the requirements the ordinance established for the granting of the conditional use. Therefore, the applicants were attempting to eliminate the conditions by obtaining variances therefrom.
>
> The attempt to follow this procedure creates fundamental and conceptual problems with the generally accepted proposition that, if the express conditions necessary to obtain a conditional use are met, it is a permitted use because the legislative body has made that policy decision. Does the legislative intent that the use be permitted remain if the conditions are not met but are eliminated by an administrative body granting a variance? Upon such an occurrence, the application for a conditional use becomes dependent upon the granting of the variances. Under those circumstances, the presumption that a conditional use is permitted may well fall by the wayside. The policy that establishes certain uses as permitted is predicated upon the satisfaction, not avoidance, of conditions. Conditions the legislative body attaches to the granting of a conditional use normally must be met in accordance with the statute—not avoided.
>
> The same reasoning, if correct, may apply to the grant of special exceptions because both special exceptions and conditional uses, under standard zoning principles, are considered to be permitted uses if the requirements of either can be satisfied. (Although often used interchangeably, conditional uses and special exceptions technically are distinguishable. Conditional uses normally relate to uses, while special exceptions relate to yard size, height, density, parking or other dimensional factors.) Generally, special exception provisions require the satisfaction of conditions specified in an ordinance. The impact of a special exception, in relation to the conditions required by the ordinance, may differ if the grant of the exception and its resulting impact is enlarged by a variance. This creates a problematic issue: Does the original purpose for which a special exception has been predetermined to be a permitted use by the Legislature remain valid? We need not

Respondent sought judicial review only of the Board's grant of the boat slip variance. The Circuit Court for Anne Arundel County reversed the Board, stating in regard to the standard used by the Board:

> With regard to the Board's determination that failure to grant a variance would cause unwarranted hardship to the Belvoir community, both parties have cited similar language from the Board's decision:
>
>> Although Belvoir Farms has 90 platted lots, and 360 acres of area, only 4 of the lots are located on the parcel to the east of River Road. The remaining lots are on the western parcel and are not contiguous to the waterfront area. Yet these non-waterfront lots are not far removed from the waterfront property, and a strict application of the law would create *practical difficulties* in permitting the subdivision to obtain reasonable use of the waterfront property. [Emphasis added.]

We shall vacate the judgment of the circuit court and remand this case to that court with instructions to vacate the Board's decision and remand for further proceedings by the Board.

## II.  Discussion

The Board appears to have utilized the wrong standard in determining whether the variance should be issued. Although it did mention the "unwarranted hardship" standard in its conclusion, the Board stated more than once in its opinion that it was utilizing a "practical difficulties" standard:

> [T]he unique physical conditions inherent in this lot, and the exceptional circumstances involving protection of the environment, make the granting of a variance necessary in order to avoid practical difficulties and to enable the Petitioner to develop this property . . . . [3]

---

address the issue further, but as *Chester Haven* implied, it is a potential problem that needs consideration by the parties involved on either side of special exception and conditional use issues.

**3.** By this statement, the Board may have been referring to the variance pertaining to the common driveway. We quote the statement nonethe-

... [A] strict application of the law would create practical difficulties in permitting the subdivision to obtain reasonable use of the waterfront property.

In Anne Arundel County, under the current ordinance, the practical difficulties standard has no application in variances sought in the critical area. *See* Anne Arundel County Code (1996), Art. 3, § 2–107(b). In 1993, prior to the grant of the variance in this case, Anne Arundel County modified its critical area variance provisions by adding subsection (b) to section 2–107. Subsection (b), enacted at the insistence of the Commission, eliminated the practical difficulties standard for critical area variances. Thus, while section 2–107 retained a "practical difficulties or unnecessary hardship" standard in subsection (a) for property outside the critical area, that standard no longer applied in critical area variance applications.[4]

Subsection (b) substitutes different, generally stricter requirements for variances in the critical area:

---

less to show the Board's confusion over the proper standard to apply to either critical area variance.

**4.** Apparently, the requirement that property be unique also was modified, if not eliminated, from critical area variances. Subsection (a)(1) of section 2–107 required, and continues to require, the satisfaction of the traditional first prong of a variance requirement that the property possess "certain unique physical conditions, such as irregularity, narrowness or shallowness of lot size and shape, or exceptional topographical conditions peculiar to and inherent in the particular lot." The traditional uniqueness standard was replaced by subsection (b)(1), which addresses critical area variances, with the language "due to the features of a site *or other circumstances* other than financial considerations, strict implementation of the County's critical area program would result in an unwarranted hardship." (Emphasis added.)

Respondent compares the St. Mary's County ordinance at issue in *North v. St. Mary's County*, 99 Md.App. 502, 512, 638 A.2d 1175, 1180, *cert. denied sub nom. Enoch v. North*, 336 Md. 224, 647 A.2d 444 (1994), as "almost identical" with the Anne Arundel County provisions. In our view, the St. Mary's County ordinance, *as it was mentioned* in *North*, was stricter because it appeared to require a finding that the property was unique in the traditional legal sense of the word. In Anne Arundel County, subsection (b)(1) replaces the uniqueness requirement with considerations of the "features of a site or other circumstances."

(b) For a property located in the critical area, a variance to the requirements of the County critical area program may be granted after determining that:

(1) due to the features of a site or other circumstances other than financial considerations, strict implementation of the County's critical area program would result in an unwarranted hardship to the applicant;

(2) a literal interpretation of the [State critical area regulations] or the County critical area program and related ordinances will deprive the applicant of rights commonly enjoyed by other properties in similar areas within the critical area of the County;

(3) the granting of a variance will not confer on an applicant any special privilege that would be denied by [State regulations] or the County critical area program to other lands or structures within the County critical area;

(4) the variance request:

(i) is not based on conditions or circumstances that are the result of actions by the applicant; and

(ii) does not arise from any condition relating to land or building use, either permitted or non-conforming, on any neighboring property; and

(5) the granting of the variance:

(i) will not adversely affect water quality or adversely impact fish, wildlife, or plant habitat within the County's critical area; and

(ii) will be in harmony with the general spirit and intent of the County critical area program.

Subsection (b)(1) clearly requires petitioner to prove, and the Board to find, an unwarranted hardship before any variance can be issued. The Board's application of the lesser practical difficulties standard, therefore, was an error of law.

■ Generally, a decision of an administrative agency, including a local zoning board, is owed no deference when its conclusions are based upon an error of law. *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 569, 709 A.2d

749, 753 (1998) ("[W]e may reverse an administrative decision premised on erroneous legal conclusions." (citing *People's Counsel v. Maryland Marine Mfg. Co.*, 316 Md. 491, 497, 560 A.2d 32, 34–35 (1989))). This Court, however, has noted that in certain situations remand, rather than reversal, is necessary for the zoning agency to review the evidence further or to take other more appropriate action:

> It is a fundamental principle of administrative law that a reviewing court should not substitute its judgment for the expertise of the administrative agency from which the appeal is taken. This principle underlies the rule that if an administrative function remains to be performed after a reviewing court has determined that an administrative agency has made an error of law, the court ordinarily may not modify the agency order. Under such circumstances, the court should remand the matter to the administrative agency without modification[.] . . . Finally, if an administrative function remains to be performed, a reviewing court may not modify the administrative agency's action even when a statute provides that the court may "affirm, modify or set aside" because a court may not usurp administrative functions.

*O'Donnell v. Bassler,* 289 Md. 501, 509–11, 425 A.2d 1003, 1008 (1981) (citations omitted) (footnote omitted). In *O'Donnell,* we reviewed a local zoning authority's decision to grant a special exception with attached conditions to expand an airport. Upon judicial review, the circuit court modified the local zoning board's decision, ruling that the conditions were illegal. We noted, however, that "[o]nce the Circuit Court determined that the Board had committed an error of law, the Circuit Court should have remanded the matter to the Board without modification because an administrative function remained." *Id.* at 514, 425 A.2d at 1010. In *O'Donnell,* we quoted *Federal Power Commission v. Idaho Power Co.,* 344 U.S. 17, 20–21, 73 S.Ct. 85, 87, 97 L.Ed. 15 (1952), in part:

> "It is the Commission's judgment on which Congress has placed its reliance for control of licenses. When the court decided that the license should issue without the conditions,

it usurped an administrative function. There doubtless may be situations where the provision excised from the administrative order is separable from the remaining parts or so minor as to make remand inappropriate. *But the guiding principle, violated here, is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration.*

The Court, it is true, has power 'to affirm, modify, or set aside' the order of the Commission 'in whole or in part.' But that authority is not power to exercise an essentially administrative function...."

*O'Donnell,* 289 Md. at 511–12, 425 A.2d at 1009 (citations omitted); *see also County Council v. Curtis Regency Serv. Corp.,* 121 Md.App. 123, 138, 708 A.2d 1058, 1065 (holding the circuit court correctly determined that the local zoning council applied the wrong standard of review, but should have remanded the case to the council to decide the case after applying the correct standard of review), *cert. denied,* 351 Md. 5, 715 A.2d 964 (1998); 4 Arden H. Rathkopf, *The Law of Zoning & Planning,* § 42.07[7][a], at 42–104 to 42–105 (noting that upon judicial review, a court may remand a board of appeals's decision for erring as to which ordinance applied or for applying an erroneous standard). This Court also has stated the obverse rule that the power of the circuit court to remand an administrative zoning decision must be preceded by a determination that a local zoning authority has made an error of law. *See Northampton Corp. v. Prince George's County,* 273 Md. 93, 100–01, 327 A.2d 774, 779 (1974) ("Only if the lower court had determined that the action of the council [or board] found no support in the facts and that it was unreasonable, arbitrary or capricious and not in accordance with law, could the case have been remanded for reconsideration."); *Cohen v. Willett,* 269 Md. 194, 196–97, 304 A.2d 824, 825 (1973) (noting that the circuit court exceeds its powers when it remands the decision of a local zoning board for further fact-finding without ruling that the board did not act in accordance with law); *Robertson v. County Bd. of Appeals,*

210 Md. 190, 196–97, 122 A.2d 751, 754 (1956) (holding that the circuit court errs when it remands the case without finding an error of law because, without such a finding, the court has no power to modify or reverse the board's decision or to remand the case for taking additional evidence).

The circuit court in this case properly ruled that the Board applied the wrong legal standard in approving the critical area zoning variance. The court observed: "It is clear that the Board's decision used a lesser standard in determining unwarranted hardship than is required by the case law as developed in the State of Maryland. Consequently, the Board's decision was in error as a matter of law." The court, however, went on to conclude that because "the Board us[ed] a lesser standard, . . . the Board's decision was not supported by substantial evidence that all of the conditions for granting a variance were satisfied. The Court, therefore, finds the Board's ruling to be arbitrary and capricious." The circuit court then reversed the decision of the Board.

In light of the cases noted, *supra*, the more appropriate remedy would have been for the circuit court to remand the case to the Board for further review. Generally, when an administrative agency utilizes an erroneous standard and some evidence exists, however minimal, that could be considered appropriately under the correct standard, the case should be remanded so the agency can reconsider the evidence using the correct standard. The Board, in its findings, may have considered only as much of the evidence before it as necessary, in its view, to authorize the grant of a variance based upon the lesser practical difficulties standard. Additional, unconsidered evidence before the Board may have supported the grant of the variance, even under the stricter unwarranted hardship standard.

This general rule regarding remand is especially applicable when the statute authorizing the administrative action includes the requirement that the agency consider factors of a legislative or administrative nature. For example, in the case *sub judice*, the factors the agency had to consider in Article 3,

section 2–107(b) were of an administrative nature. Specifically, the Board had to determine that

> (5) the granting of the variance:
>
>> (i) will not adversely affect water quality or adversely impact fish, wildlife, or plant habitat within the County's critical area; and
>>
>> (ii) will be in harmony with the general spirit and intent of the County critical area program.

In *O'Donnell*, 289 Md. at 512, 425 A.2d at 1009, we explained that various factors under the zoning regulations *had* to be considered by the agency because such determinations were appropriate for administrative, not judicial, review:

> Whether [the general objectives of the statute] may be achieved ... is an administrative, not a judicial decision. [*Idaho Power Co.*, 344 U.S. at 20–21, 73 S.Ct. at 87 . . . . ]

> Applying these principles to the instant case produces a clear result. Here the County Council ... entrusted the determination of whether special exception use permits should be granted to the expertise and judgment of the Board. Under the 1961 Zoning Regulations, the Board was authorized to grant special exception use permits for commercial aircraft landing fields. In exercising this function, the Board was required to "find that such use is essential or desirable to the public convenience and welfare," and that it would not "menace the ... general welfare." Thus, the grant of the special exception use permit was an administrative, not a judicial, function. Only the board had authority to issue such permits; the Circuit Court did not. [Second alteration in original; citations omitted.]

■■ In the case *sub judice*, had the Board *declined* to grant the variance at issue, and had the circuit court then found that the Board's action in not granting the variance was arbitrary and capricious because the Board had applied the wrong legal standard, the court could not have granted a variance sua sponte, the consideration of which had never been subjected to the proper standard by the administrative agency. Ordinarily, courts cannot either grant or deny vari-

ances.[5] In those circumstances, the circuit court would have the power to overrule the denial of the variance, but it would have to remand the matter to the agency for further consideration using the proper standard. The same holds true for the converse situation if the Board uses the wrong standard in granting a variance; the matter must be remanded for further consideration by the Board using the proper standard.

We shall vacate the decision of the circuit court and direct it to remand the matter to the agency for further proceedings consistent with this opinion. We shall, however, address certain of petitioner's other arguments as necessary to assist the Board in properly performing its functions on remand.

■ We first address petitioner's argument that the Commission regulations mandating Anne Arundel County to adopt an unwarranted hardship standard in its critical area zoning variance provisions conflict with state law.[6] As petitioner notes, the Express Powers Act, Maryland Code (1957, 1998 Repl.Vol.), Article 25A, section 5, broadly empowers chartered counties, such as Anne Arundel County, "[t]o enact local laws, for the protection and promotion of public safety, health, morals, and welfare, relating to zoning and planning." *Id.* § 5(X)(1)(i). Petitioner essentially argues that this clause authorizes Anne Arundel County to adopt any threshold standard for granting a variance, including a practical difficulties standard in the critical area. We agree. But we disagree

---

5. There may be circumstances in which the state of the evidence is such, even if the correct standard had been applied, that, as a matter of law, the actions of the agency in granting or denying relief, as the case may be, would be erroneous. In some of such cases, it may be appropriate for the trial court to direct agency action.

6. Respondent argues that petitioner failed to raise this issue below. The record reflects that respondent is correct. We granted the writ of certiorari, however, before this case was heard by the Court of Special Appeals. Accordingly, this Court is not constrained to the questions raised in the petition for certiorari. In such cases, this Court may decide issues for guidance on remand. We deem it important to address petitioner's argument because of the impact our response might have not only in this case, but other cases in the Maryland courts pertaining to critical area matters.

with petitioner that the adoption of that standard is *imposed* upon Article 25A counties.[7]

█ Broadly stated, section 5 of Article 25A, the Express Powers Act, generally bestows upon a county, as to those enumerated powers, the same powers in respect to local laws, as the State would otherwise have, provided that the county's enactments do not conflict with public general laws. The zoning limitations imposed by Maryland Code (1957, 1998 Repl.Vol.), Article 66B, generally do not apply to charter counties. The Legislature, by separate statutory provisions applicable to all jurisdictions, empowered the Commission to impose certain requirements on local jurisdictions as to the areas under the Commission's jurisdiction. *See generally* Md.Code (1974, 1990 Repl.Vol., 1998 Cum.Supp.), §§ 8–1801 to 8–1817 of the Natural Resources Article (Chesapeake Bay Critical Area Program). In the exercise of that power, the Commission furthers the purposes of the Legislature.

█ Petitioner argues that if the unwarranted hardship standard is stricter than the practical difficulties standard, "then the unwarranted hardship criterion conflicts with state law because it *prohibits* something state law *permits*—the grant of a variance based on the less strict standard of practical difficulties." Petitioner misstates the issue. Article 25A allows counties to utilize a practical difficulties standard with respect to their zoning laws generally, but normally does not require it.[8] The empowerment of a subordinate governmental entity by a dominant governmental entity may permit, but generally does not require, the subordinate entity to assume certain powers. There simply is no conflict with a state law when a local government declines to do that which it is allowed, but not required, to do.

---

7. We do not address whether it is mandated in other jurisdictions.

8. Even where applicable, the practical difficulties standard generally applies to "yard" variances. The variance at issue here for the community pier boat slips is a "use" variance. Generally, use variances are considered under the stricter standard of unnecessary, unreasonable, undue, or unwarranted hardship.

Anne Arundel County may have been under pressure from the Commission to adopt variance standards that did not include the practical difficulties standard, which the county otherwise may have had the power to adopt. Nevertheless, Anne Arundel County could have litigated the power of the Commission to impose the unwarranted hardship standard. Apparently, it chose not to. Absent constitutional prohibitions, the issue was settled when the county government accepted the Commission's regulatory dictates.[9]

Petitioner also argues that the Commission has not been authorized to mandate any variance standard in the critical area. Article 25A, section 5(X)(2)(v), states that the zoning powers it grants to counties "shall not be construed . . . [t]o preempt or supersede the regulatory authority of any State department or agency under any general public law." The Commission therefore may require chartered counties to adopt any variance standard it deems appropriate, if so empowered by the General Assembly, and the standard it adopts withstands constitutional scrutiny. Maryland Code (1974, 1990 Repl.Vol., 1998 Cum.Supp.), section 8–1801(b)(2) of the Natural Resources Article states that one purpose of the state critical area laws is "[t]o implement the Resource Protection Program on a cooperative basis between the State and affected local governments, with local governments establishing and implementing their programs in a consistent and uniform manner *subject to State criteria and oversight.*" (Emphasis added.) Petitioner's variance request to expand upon its

---

9. We do not consider whether the Commission's position is now consistent with its prior position, which was described to the Legislature as providing a normal variance procedure as relief to the strictness of the Critical Area statutes. That may or may not be relevant if a local jurisdiction ever litigates the power of the Commission to impose its variance requirements on local jurisdictions. In the case *sub judice,* Anne Arundel County adopted the requirements instead of litigating them. Whether the Commission has the power to impose is simply not relevant when the local government has the power and chooses, for whatever reason, to enact stricter requirements. The solution, if a problem in fact exists, in the absence of constitutional violations, is the ballot box.

community pier is governed by section 8–1808.5. Subsection (f) of that provision required that "[o]n or before December 31, 1994, a local jurisdiction shall amend its local critical area protection program to meet the provisions" of section 8–1808.5. Within those program amendments, subsection (e) permitted each local jurisdiction to "grant a variance from the provisions of this section in accordance with regulations adopted by the Commission concerning variances as part of local program development . . . and notification of project applications. . . ." Thus, contrary to petitioner's assertion, the General Assembly has authorized the Commission to create and enforce regulations to guide localities in adopting ordinances that regulate variance requests pertaining to community piers. The Commission regulations and Article 3, section 2–107 of the Anne Arundel County Code are authorized by state statute and, therefore, do not conflict with state law.

▆▆ To assist the Board on remand, we also address petitioner's second argument that the unwarranted hardship standard required for a critical area variance is less restrictive than the unnecessary (or undue) hardship standard generally applied to "use" variance applications.[10] We interpret the

---

10. A "use" variance generally permits a land use other than the uses permitted in the particular zoning ordinance, such as a variance for commercial use in a zone restricted to residential use, while an "area" variance generally excepts an applicant from area, height, density, setback, or sideline restrictions, such as the distance required between buildings. *Anderson v. Board of Appeals*, 22 Md.App. 28, 37–38, 322 A.2d 220, 225–26 (1974); 12 Richard R. Powell, *Powell on Real Property*, § 79C.16[1], at 79C–538 to 79C–539 (Patrick J. Rohan ed., Matthew Bender 1998). When the terms unnecessary hardship (or one of its synonyms) and practical difficulties are framed in the disjunctive ("or"), Maryland courts generally have applied the more restrictive hardship standard to use variances, while applying the less restrictive practical difficulties standard to area variances because use variances are viewed as more drastic departures from zoning requirements. *See McLean v. Soley*, 270 Md. 208, 215, 310 A.2d 783, 787 (1973); *Loyola Federal Sav. & Loan Ass'n v. Buschman*, 227 Md. 243, 248, 176 A.2d 355, 358–59 (1961); *Cromwell v. Ward*, 102 Md.App. 691, 695 n. 1, 651 A.2d 424, 426 n. 1 (1995); *Red Roof Inns, Inc. v. People's Counsel*, 96 Md.App. 219, 225, 624 A.2d 1281, 1284 (1993); *Anderson*, 22 Md.App. at 38, 322 A.2d at 227. Petitioner argues that its variance application was for an area variance and, therefore, either the practical difficulties

terms generally to be indistinguishable. *Cf. Bright v. City of Evanston*, 10 Ill.2d 178, 182, 139 N.E.2d 270, 272–73 (1956) (citing *Central Trust Co. v. City of Cincinnati*, 62 Ohio App. 139, 23 N.E.2d 450, 453 (1939)) (using the terms undue and unwarranted hardship interchangeably). This Court has said that "[T]he criterion for determining unnecessary hardship is whether the applicable zoning restriction when applied to the property in the setting of its environment is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private ownership." *Marino v. Mayor of Baltimore*, 215 Md. 206, 217, 137 A.2d 198, 202 (1957). We also have noted:

> The need sufficient to justify an exception [11] must be substantial and urgent and not merely for the convenience of the applicant, inasmuch as the aim of the ordinance is to prevent exceptions as far as possible, and a liberal construction allowing exceptions for reasons that are not substantial and urgent would have the tendency to cause discrimination and eventually destroy the usefulness of the ordinance.

*Carney v. City of Baltimore*, 201 Md. 130, 137, 93 A.2d 74, 76–77 (1952). *See also Marino*, 215 Md. at 216, 137 A.2d at 202 ("As a general rule, [variances] are granted sparingly, and

---

standard should apply or the unwarranted hardship language should be equated to a practical difficulties requirement. Although we disagree that the request is for an area variance, it makes no difference what type of variance request petitioner made because section 2–107(b) specifically mandates that it prove an unwarranted hardship, which is clearly more restrictive than proving practical difficulties. *See Anderson*, 22 Md.App. at 41, 322 A.2d at 227–28 (holding that, even though party sought an area variance, the ordinance required them to prove an unnecessary hardship).

11. This Court and the Court of Special Appeals have noted that in Baltimore City, due to the statutory language, "exceptions" are really variances. *See, e.g., Dampman v. Mayor of Baltimore*, 231 Md. 280, 285, 189 A.2d 631, 634 (1963) ("In Baltimore City there appears to be no distinction between the two terms."); *Cromwell*, 102 Md.App. at 705, 651 A.2d at 431 ("Baltimore City, by the terms of its ordinance, applies the same standards to both variances and special exceptions.... Thus, the Baltimore City special exceptions procedure is one only by title. For all practical purposes, it is also a variance procedure.").

under exceptional circumstances."); *North v. St. Mary's County*, 99 Md.App. 502, 518–19, 638 A.2d 1175, 1183 (citing numerous Court of Appeals opinions denying variances), *cert. denied sub. nom Enoch v. North*, 336 Md. 224, 647 A.2d 444 (1994); 12 Richard R. Powell, *Powell on Real Property*, § 79C.16[1], at 79C–554 (Patrick J. Rohan ed., Matthew Bender 1998) ("[T]he 'hardship' must be substantial and serious to require the grant of a variance."); 3 E.C. Yokley, *Zoning Law and Practice*, § 21–6, at 296 (4th ed. 1979) ("[T]he general rule is that a variance is proper or permissible only in cases of necessity and for substantial and compelling reasons.").

Maryland appellate courts have offered two different definitions of what constitutes an unwarranted, undue, or unnecessary hardship. In *Loyola Federal Sav. & Loan Ass'n v. Buschman*, 227 Md. 243, 248, 176 A.2d 355, 358 (1961), this Court stated "that use variances are customarily concerned with 'hardship' cases, where *the land cannot yield a reasonable return if used only in accordance with the use restrictions* of the ordinance and that a variance must be permitted to avoid confiscatory operation of the ordinance." (Emphasis added.) We then noted that "in this State ... the mere fact that some use other than that permitted under an applicable zoning ordinance would be more profitable than any use which is permitted thereunder is not enough to invalidate a use restriction, *if the property can reasonably be used for some purpose* for which it is adapted." *Id.* at 248–49, 176 A.2d at 358 (emphasis added); *see also Anderson*, 22 Md.App. at 38, 322 A.2d at 226 (noting that to meet the undue hardship standard, the applicant must prove that "[i]f he complied with the ordinance he would be unable to secure a reasonable return from or to make any reasonable use of his property." (citing *Pem Constr. Co. v. Mayor of Baltimore*, 233 Md. 372, 378, 196 A.2d 879, 882 (1964); *Marino*, 215 Md. at 218, 137 A.2d at 202)). Finally, interpreting the unwarranted hardship standard in a St. Mary's County critical area zoning ordinance, the Court of Special Appeals said in *North*, 99 Md.App. at 517, 638 A.2d at 1182, that "it is a denial of *reasonable* use that creates an unwarranted hardship."

Both of these standards, "denial of reasonable use" and "denial of a reasonable return," have been adopted in other jurisdictions. A majority of the courts addressing the issue appear to adopt the denial of reasonable use standard. *See Ex Parte Chapman*, 485 So.2d 1161, 1162 (Ala.1986) (stating that an unnecessary hardship is proved when the premises "cannot be put reasonably to a conforming use because of the limitations imposed upon them...."); *Ivancovich v. City of Tucson Bd. of Adj.*, 22 Ariz.App. 530, 538, 529 P.2d 242, 250 (1974) ("A use variance cannot be granted unless the situation arises where reasonable use cannot be made of the property in a manner consistent with the zoning regulations."); *Town of Indialantic v. Nance*, 485 So.2d 1318, 1320 (Fla.Dist.Ct.App.) (noting that an applicant must prove a hardship by showing that no "reasonable use ... can be made of the property" or that it is "virtually impossible to use the land for the purpose for which it is zoned."), *review denied*, 494 So.2d 1152 (Fla. 1986); *Suess v. Vogelgesang*, 151 Ind.App. 631, 636, 281 N.E.2d 536, 540 (1972) (stating that hardship exists when "the property for which variance is sought cannot reasonably be put to conforming use."); *Kirkwood v. Board of Appeals*, 17 Mass.App.Ct. 423, 429, 458 N.E.2d 1213, 1217 (1984) (noting that "hardship is usually present when a landowner cannot reasonably make use of his property for the purposes ... allowed by the zoning ordinance."); *Hedlund v. City of Maplewood*, 366 N.W.2d 624, 627 (Minn.Ct.App.1985) ("Undue hardship means[ ] the property in question cannot be put to a reasonable use if used under conditions allowed by official controls...." (quoting Minn.Stat. § 462.357, subd. 6(2) (1982))), *overruled on other grounds by Myron v. City of Plymouth*, 562 N.W.2d 21 (Minn.Ct.App.1997); *Husnander v. Town of Barnstead*, 139 N.H. 476, 478, 660 A.2d 477, 478 (1995) ("Hardship warranting the grant of a variance exists where 'the deprivation resulting from application of the ordinance [is] so great as to effectively prevent the owner from making any *reasonable* use of the land.' " (quoting *Governor's Island Club v. Town of Gilford*, 124 N.H. 126, 130, 467 A.2d 246, 248 (1983) (alteration in original))); *Eagle Group v.*

*Zoning Bd. of Adj.,* 274 N.J.Super. 551, 563, 644 A.2d 1115, 1121 (1994) (defining "undue hardship" as circumstances when "the property cannot reasonably be developed with a conforming use." (quoting *Medici v. BPR Co.,* 107 N.J. 1, 4 n. 1, 17 n. 9, 526 A.2d 109, 110 n. 1, 117 n. 9 (N.J.1987))); *Downtown Neighborhoods Ass'n v. City of Albuquerque,* 109 N.M. 186, 191, 783 P.2d 962, 967 (N.M.Ct.App.1989) ("[Unnecessary hardship] ordinarily refers to circumstances in which no reasonable use can otherwise be made of the land."); *Gadhue v. Marcotte,* 141 Vt. 238, 240, 446 A.2d 375, 376 (1982) (noting that a state statute required proof of the denial of all reasonable use before a variance could be granted); *Buechel v. State Dept. of Ecology,* 125 Wash.2d 196, 205–10, 884 P.2d 910, 916–18 (1994) (interpreting a state environmental statute that required preclusion or significant interference with reasonable use of the property); *State v. Kenosha County Bd. of Adj.,* 218 Wis.2d 396, ¶ 31, at 413, 577 N.W.2d 813, 821 (1998) (adopting the definition of unnecessary hardship as allowing "no reasonable use of the property without a variance"); *see also* 12 Powell, *supra,* § 79C.16[1], at 79C–549 ("[Unnecessary hardship] usually refers to a situation where no reasonable use can otherwise be made of the land.").

A few jurisdictions define the hardship necessary to grant a use variance as the denial of a reasonable return on the property. *See Jenney v. Durham,* 707 A.2d 752, 758 (Del.Super.Ct.) ("The unnecessary hardship standard requires the applicant to show that . . . the property cannot yield a reasonable return when used only for a permitted use. . . ."), *aff'd,* 696 A.2d 396 (Del.1997); *Downtown Cluster of Congregations v. District of Columbia Bd. of Zoning Adj.,* 675 A.2d 484, 491–92 (D.C.1996) ("To demonstrate undue hardship, an applicant must prove that the property cannot be 'put to any conforming use with a fair and reasonable return arising out of the ownership thereof.'" (quoting *Palmer v. Board of Zoning Adj.,* 287 A.2d 535, 542 (D.C.1972))); *Greenawalt v. Zoning Bd. of Adj.,* 345 N.W.2d 537, 542 (Iowa 1984) (noting that an applicant establishes unnecessary hardship by showing that the property "cannot yield a reasonable return if used only for

a purpose allowed in that zone. . . ."); *Goldstein v. City of S. Portland,* 1999 ME 66, ¶ 4, 728 A.2d 164, 165 (1999) (quoting a state statute that defines undue hardship as when the property "can not yield a reasonable return unless a variance is granted."); *Otto v. Steinhilber,* 282 N.Y. 71, 76, 24 N.E.2d 851, 853 (1939) ("Before the Board may . . . grant a variance upon the ground of unnecessary hardship, the record must show that . . . the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone. . . ."), *quoted in Matthew v. Smith,* 707 S.W.2d 411, 416 (Mo.1986). To prove the failure to yield a reasonable return, some courts require that the applicant be denied all *beneficial* use of the property. *See Greenawalt,* 345 N.W.2d at 542 ("Lack of a reasonable return may be shown by proof that the owner has been deprived of *all* beneficial use of his land."), *quoted in Matthew,* 707 S.W.2d at 417; *Goldstein,* 1999 ME 66, ¶ 5, 728 A.2d at 165 ("In order to satisfy the reasonable return requirement, the applicant must demonstrate that 'strict compliance with the terms of the ordinance would result in the practical loss of substantial beneficial use of the land.'" (quoting *Bailey v. City of S. Portland,* 1998 ME 54, ¶ 6, 707 A.2d 391, 393)); *see also Warner v. Jerusalem Township Bd. of Zoning App.,* 63 Ohio Misc.2d 385, 392, 629 N.E.2d 1137, 1142 (Ohio Ct.C.P.1993) (noting that to prove an unnecessary hardship, it is necessary to show that "all permitted uses are not economically feasible or cannot be efficiently continued" because the owner is deprived of all beneficial use of the property); *Almeida v. Zoning Bd. of Review,* 606 A.2d 1318, 1320 (R.I.1992) ("Unnecessary hardship exists when literal application of the zoning ordinance completely deprives an owner of all beneficial use of his property and when granting a variance becomes necessary to prevent an indirect confiscation of the property without compensation.").

A few jurisdictions provide alternative definitions, though some of these are imposed by statute. *See Bowman v. City of York,* 240 Neb. 201, 213, 482 N.W.2d 537, 545 (1992) (noting that a state statute and a local ordinance "define undue hardship as a demonstrable and exceptional hardship as distin-

guished from variations for purposes of convenience, 'profit or caprice.'"); *Allegheny W. Civic Council v. Zoning Bd. of Adj.*, 547 Pa. 163, 167–68, 689 A.2d 225, 227–28 (1997) ("Unnecessary hardship is established by evidence that the physical features of the property are such that it cannot be used for a permitted purpose or that the property can be conformed for a permitted use only at a prohibitive expense" or "that the property has no value for any purpose permitted by the zoning ordinance."); *Natrella v. Board of Zoning App.*, 231 Va. 451, 457, 345 S.E.2d 295, 299 (1986) (noting state code definition of unnecessary hardship as " 'effectively prohibit[ing]' the use of the property; or 'unreasonably restrict[ing] the use of the property;' or 'where the board is satisfied . . . that granting of such variance will alleviate a clearly demonstrable hardship approaching confiscation.' " (quoting Va.Code Ann. § 15.1-495(b))).

Authorities throughout the country thus define the unnecessary, unreasonable, unwarranted, or similarly-worded hardship standards to be either the denial of beneficial or reasonable use or the denial of all viable economic use, the unconstitutional taking standard. It is important to note here that the purpose of a variance is to protect the landowner's rights from the unconstitutional application of zoning law. *See, e.g., Packer v. Hornsby*, 221 Va. 117, 122, 267 S.E.2d 140, 142 (1980) ("Because a facially valid zoning ordinance may prove unconstitutional in application to a particular landowner, some device is needed to protect landowners' rights without destroying the viability of zoning ordinances."). This does not necessarily mean that a variance may only be granted in cases in which application of a particular zoning ordinance would result in an unconstitutional taking of property. *See, e.g., id.* ("A statute may, of course, authorize variances in cases where no ordinance's application to particular property is not unconstitutional."); 8 Eugene McQuillin, *The Law of Municipal Corporations,* § 25.167, at 761 (3d ed. 1991) ("A condition of difficulty or hardship is not deemed equivalent to a taking of property, in the constitutional sense. . . ." (footnote omitted)). An unconstitutional taking of property generally is proved

when a "regulation denies all economically beneficial or productive use of land." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992); *see also Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304 (1994) ("A land use regulation does not effect a taking if it . . . does not 'den[y] an owner economically viable use of his land.' " (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)) (alteration in original)). We reject the proposition that the unnecessary or unwarranted hardship standard is equal to an unconstitutional taking standard. If this were true, it would be a superfluous standard because the constitutional standard exists independent of variance standards. We generally avoid a construction of statutory language that would render the statute unnecessary, meaningless, or redundant. *See Hyle v. Motor Vehicle Admin.*, 348 Md. 143, 149, 702 A.2d 760, 763 (1997); *Board of County Comm'rs v. Bell Atlantic–Maryland*, 346 Md. 160, 178, 695 A.2d 171, 180 (1997).

We hold, therefore, that the unnecessary or unwarranted hardship standard, or similar standards, are less restrictive than the unconstitutional taking standard. The unwarranted hardship standard, and its similar manifestations, are equivalent to the denial of reasonable and significant use of the property. Whether a property owner has been denied reasonable and significant use of his property is a question of fact best addressed by the expertise of the Board of Appeals, not the courts. Thus, we leave the application of this standard to petitioner's variance application to the Board on remand.

### III. Conclusion

The Board mistakenly applied the practical difficulties standard to petitioner's variance request. We therefore vacate the judgment of the circuit court and remand the case with instructions to vacate the decision of the Board based on the Board's failure to apply the unwarranted hardship standard. The circuit court shall remand the case to the Board for further consideration in accordance with this opinion. We

decline to address petitioner's third question, whether the Board may consider the "rights commonly enjoyed" by others granted variances before critical area zoning came into being, because it would be more appropriate for the Board to reconsider that issue on remand.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE DECISION OF THE ANNE ARUNDEL COUNTY BOARD OF APPEALS AND TO REMAND THE CASE TO THE BOARD OF APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY RESPONDENT.**