75 A.3d 344

**Donald C. ROANE**

v.

**MARYLAND BOARD OF PHYSICIANS, et al.**

Nos. 271, 542 Sept. Term, 2012.

Court of Special Appeals of Maryland.

Sept. 5, 2013.

620

622

Alan H. Legum, Annapolis, MD, for Appellant.

David F. Wagner (Douglas F. Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: EYLER, DEBORAH S., MEREDITH, NAZARIAN, JJ.

NAZARIAN, J.

After receiving and investigating complaints involving medication-for-sex relationships between appellant Donald C. Roane, M.D. and two vulnerable patients, the Maryland Board of Physicians ("Board") initiated two separate disciplinary proceedings against him: one to suspend his license to practice medicine summarily and another to revoke it altogether. The Board ultimately took both actions, and prevailed when Dr. Roane challenged both decisions in the Circuit Court for Anne Arundel County. Dr. Roane contends in these appeals that the Board lacked authority to suspend him *and* seek to revoke his license at the same time and, even if it had the authority, that both decisions were arbitrary and capricious and not supported by substantial evidence. Because we find no errors in the revocation proceeding, we affirm that decision, and because that decision leaves Dr. Roane with no license to suspend, we dismiss his appeal of the suspension proceeding as moot.

## I. BACKGROUND

Dr. Roane was first licensed to practice medicine in Maryland in 1965. He maintained a full-time family practice in West River, Maryland and Annapolis, Maryland from about 1973 through 2001, "semi-retired" in 2001, then purportedly

retired from the practice of medicine in 2008. The Board first charged Dr. Roane with violations of the Maryland Medical Practice Act, Md.Code (1981, 2009 Repl. Vol.), § 14–101 *et seq.* of the Health Occupations Article ("HO") on April 12, 2010.[1]

### A. Patient Allegations.

The Board first received allegations involving Dr. Roane in February 2003, when one of his former patients ("Patient A") filed a complaint with the Board. Patient A alleged that Dr. Roane sexually assaulted her beginning in 1974 when, at the age of fourteen, she began medical treatment with him for insulin-dependent diabetes. She alleged that the assaults continued through 2003.

Dr. Roane's advances toward Patient A began when he fondled her breasts at her first or second visit with him; she said that he showed an interest in her social life and led her to believe he cared for her. Patient A had a history of sexual abuse by her father and brother, along with a history of depression and behavior that one therapist characterized as "narcissistically self-absorbed, and extremely manipulative." Over the near thirty-year history of the relationship, Dr. Roane gave Patient A samples of prescription medication in return for sexual activity. These medications included not just insulin to treat her diabetes, but also Zoloft to treat her depression. When Patient A began counseling in 2002, her counselor discussed Patient A's relationship with Dr. Roane in an attempt to "break her long history of victimization," and

---

1. Section 14–404 of the Health Occupations Article provides as follows:
 (a) Subject to the hearing provisions of § 14–405 of this subtitle, the Board ... may reprimand any licensee, place any licensee on probation, or suspend or revoke a license if the licensee:
 * * *
 (3) Is guilty of:
 (i) *Immoral conduct in the practice of medicine;* or
 (ii) Unprofessional conduct in the practice of medicine....
 In turn, the Code of Maryland Regulations ("COMAR") prohibits sexual misconduct by any individual licensed or certified under Titles 14 and 15 of the Health Occupations Article. Md.Code Regs. 10.32.17.03 (2013).

the last time Patient A saw Dr. Roane was in her apartment in January 2003, when he physically assaulted her.[2]

Patient B's complaint, filed with the Board in May 2004, gave a detailed account of sexual activity in Dr. Roane's office on repeated occasions. Patient B, who also had a complex history that included incarcerations and crack cocaine abuse, first sought treatment from Dr. Roane in May 1982, when she was in her early twenties. In 1988 or 1989, Dr. Roane sexually assaulted her while she was lying on the examination table and after an attending nurse left the room. Patient B continued treatment with Dr. Roane and "[o]n a number of occasions," Dr. Roane "gave Patient B free prescription medication or money in return for fellatio." Patient B did not report the conduct at the time, but did file a complaint in May 2004 at the urging of a psychiatrist who was treating her at that time.

## B. The Summary Suspension Proceeding.

The Board initiated two proceedings in response to the complaints filed by Patient A and Patient B. *First,* on April 12, 2010, the Board charged Dr. Roane with violating HO § 14–404 and voted on May 21, 2010 to suspend his license summarily. The parties appeared before an administrative law judge ("ALJ") to present evidence regarding the charges on June 7, 2010 (the "Suspension Proceeding"), and at that time the Board presented the testimony of Patients A and B, along with that of a licensed certified social worker who had treated Patient A.

Dr. Roane also testified at the hearing (the "Suspension Hearing"), and although his version of events differed from the accounts of the Board's witnesses, he hardly exonerated

---

**2.** In addition to complaining to the Board, Patient A filed a criminal complaint against Dr. Roane that led to entry of a consent order under which the District Court for Anne Arundel County made no findings of fact, but Dr. Roane agreed not to contact Patient A or enter her residence. Patient A also filed a civil suit against Dr. Roane in the Circuit Court for Anne Arundel County that led to a confidential settlement agreement.

himself. He admitted to a personal relationship with Patient A, including two sexual encounters. He testified that he treated Patient A in the 1975–76 time period and did not provide any treatment for her after that time. Nevertheless, he admitted writing on her behalf to Pfizer, a pharmaceutical company, in January 2000 to support her request for free antidepressant medication, and admitted that he described Patient A in his letter as someone he "followed in [his] practice for more than 20 years." He testified that his representation to Pfizer was inaccurate, but was meant as "embellishment" designed to ensure that Patient A received the free medication. He contended that he did not believe he had any reason to "be concerned" about having a personal or sexual relationship with Patient A because in his view, she was not his patient. And when asked during the Suspension Hearing about his relationship with Patient A—"And is it your testimony that after that physician/patient relationship was terminated, in your opinion, that there was no problem with having a personal or sexual relationship with her?"—Dr. Roane answered, "Except as far as my marital status." Dr. Roane categorically denied any sexual contact with Patient B.

After hearing and considering the evidence, the ALJ issued a written order that concluded, by a preponderance of the evidence, that Dr. Roane's continued practice of medicine raised a "substantial likelihood of risk of serious harm to the public health, safety, or welfare," because of the sexual relationships Dr. Roane initiated and encouraged with Patients A and B. The ALJ discussed at length the encounters between Dr. Roane and Patient A underlying his finding that Dr. Roane engaged in sexual misconduct with Patient A. The ALJ disagreed specifically with Dr. Roane's contention that he was not "practicing medicine" when he requested medication on Patient A's behalf from Pfizer. More generally, the ALJ found that the two patients' independent accounts tended to corroborate further one another's allegations and bolstered his determination that their versions of events were more credible than Dr. Roane's. And the ALJ noted that both victims were "vulnerable individuals":

They both were subject to rather easy manipulation. Neither had substantial means for medical care and both needed medication on a regular basis. . . . [N]either patient was known to the other, yet their stories regarding [Dr. Roane's] actions toward them were strikingly similar.

Based on his findings, the ALJ concluded that summary suspension was appropriate and affirmed the Board's decision. Dr. Roane filed exceptions to the ALJ's decision that attacked the length of the Board's investigation before initiating the Suspension Proceeding and challenged the Board's authority to seek summary suspension and revocation simultaneously, but, importantly, did not dispute the ALJ's factual findings. On December 13, 2010, the Board issued a final decision upholding the decision of the ALJ and ordered summary suspension of Dr. Roane's license (the "Suspension Order"). The Department of Health and Mental Hygiene Board of Review affirmed the Suspension Order on April 5, 2011.

On April 20, 2011, Dr. Roane filed a petition for judicial review of the Suspension Order in the Circuit Court for Anne Arundel County. By that time, however, the Board had revoked his license through the proceeding we discuss next and, as part of the revocation, terminated the summary suspension. After a hearing, the circuit court dismissed the petition as moot, then denied Dr. Roane's subsequent Motion to Revise Judgment. Dr. Roane filed a timely appeal.

## C. The Revocation Proceeding.

The Board initiated a separate proceeding that sought, based on the same alleged violations of HO § 14–404(a)(3), to revoke Dr. Roane's license altogether (the "Revocation Proceeding"). This proceeding was assigned to a different ALJ, who held an evidentiary hearing on October 25, 2010 (the "Revocation Hearing"). The parties agreed at that time to incorporate all of the testimony and exhibits from the Suspension Hearing rather than reprising the same presentations.

On January 24, 2011, the ALJ issued a proposed decision in which he upheld the charges and recommended that the Board

revoke Dr. Roane's license. He specifically disagreed with Dr. Roane's contention that his admission of sexual activity on two occasions with Patient A and the letter to Pfizer were insufficient to justify revocation of his license:

> I have found that [Dr. Roane] abused his profession to satisfy his sexual desires. In the process, he shamelessly exploited the vulnerabilities of two young women. The Legislature has given authority to the Board to revoke a physician's license under these circumstances.

Dr. Roane filed exceptions to the Proposed Decision on February 7, 2011. The Board issued a Final Decision and Order (the "Revocation Order") on June 23, 2011, in which it concluded, consistent with its prior finding, that Dr. Roane had violated HO § 14–404 and revoked his license to practice medicine. The Board also directed that the prior Suspension Order, which had issued on May 21, 2010, be terminated as moot.

Dr. Roane petitioned the Circuit Court for Anne Arundel County for judicial review and following a hearing, the court entered an order on March 29, 2012, affirming the Revocation Order (the "Order Affirming Revocation"). The court concluded that Dr. Roane had waived both his argument that the Board's findings were not based on substantial evidence and his argument that the Board acted arbitrarily and capriciously, because he had not raised these arguments at the proper stage of the proceedings—*i.e.*, in the course of raising exceptions to the ALJ's findings in front of the Board itself. On April 12, 2012—fourteen days after the circuit court's entry of its order—Dr. Roane filed a Motion to Alter or Amend and Motion to Revise Judgment (the "Motion to Alter or Amend"). The circuit court denied the Motion to Alter or Amend by order dated May 2, 2012 (the "Order Denying Motion to Alter or Amend"), and he appealed that decision on May 30, 2012.

## II. DISCUSSION

### A. The Playing Field.

These two appeals grow out of the same underlying facts, raise the same issues, and are procedurally intertwined to the

point where our decision in one (Case No. 542, September Term 2012, the "Revocation Appeal") drives the outcome of the other (Case No. 271, September Term 2012, the "Suspension Appeal"). For the sake of efficiency, we address both appeals in one opinion, and we start by outlining our analysis.

Both appeals ask the same question at the outset: whether the Board had the authority to move simultaneously to suspend Dr. Roane's license summarily and to revoke it. We address that question first, and hold that the Health Occupations Article authorized the Board to pursue both forms of discipline at the same time. Dr. Roane argues that *Board of Physician Quality Assurance v. Mullan*, 381 Md. 157, 848 A.2d 642 (2004), prohibits the Board from choosing *both* of these paths at the same time, but we disagree with his reading of *Mullan*. The issue appears to be one of first impression, as no other Maryland case addresses directly whether the paths are mutually exclusive. This may well be the case because it seems obvious from the structure of the statute that the Board is entitled to suspend and revoke a practitioner's license at the same time, and so no court has found it necessary to say so expressly. We analyze the question here to clarify any misconception about *Mullan*, and we explain below why both as a matter of statutory authority and as a matter of common sense, the Board acted properly.

We then address the Revocation Appeal, in which Dr. Roane claims the circuit court improperly dismissed the Petition for Judicial Review on the ground that he waived his right to attack the Board's findings as unsupported by substantial evidence and as arbitrary and capricious.[3] We agree with the circuit court's reasoning and affirm its decision to dismiss Dr.

---

**3.** Dr. Roane listed the following Questions Presented in his brief in the Revocation Appeal:

 I. Whether the Appellees were entitled to bring both a revocation action and summary suspension action for the same violation?

 II. Whether the Circuit Court erred in refusing to consider Appellant's substantial evidence argument?

 III. Whether the Circuit Court erred in refusing to consider Appellant's arbitrary and capricious argument?

Roane's petition. From there, we address the Suspension Appeal, in which Dr. Roane challenges the Board's decision to suspend him summarily.[4] But because we conclude that the Board had properly *revoked* Dr. Roane's license, the suspension is moot, and we dismiss the Suspension Appeal on that basis.

### B. Standard of Review.

 The scope of judicial review of agency decisions is defined by the Administrative Procedure Act, Md.Code (1984, 2009 Repl. Vol.), § 10–201 *et seq.* of the State Government Article ("SG").[5] Within that framework, our review is well defined and, for the most part, quite limited: we look through the circuit court's review to the agency decision itself and determine whether there is substantial evidence in the record as a whole to support the agency's findings and conclusions. *Wallace H. Campbell & Co., Inc. v. Md. Comm'n on Human*

---

4. Dr. Roane listed the following Questions Presented in his brief in the Suspension Appeal:
 I. Whether the Appellees were entitled to bring both a revocation action and summary suspension action for the same violation?
 II. Whether the Board of Physician's decision to summarily suspend Dr. Roane's license was arbitrary and capricious?
 III. Whether the Board of Physician's decision to summarily suspend Dr. Roane's license was not supported by substantial evidence?

5. Section 10–222(h) of the State Government Article provides:
 (h) In a proceeding under this section, the court may:
 (1) remand the case for further proceedings;
 (2) affirm the final decision; or
 (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
 (i) is unconstitutional;
 (ii) exceeds the statutory authority or jurisdiction of the final decision maker;
 (iii) results from an unlawful procedure;
 (iv) is affected by any other error of law;
 (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
 (vi) is arbitrary or capricious.
 SG § 10–222(h).

*Relations,* 202 Md.App. 650, 662, 33 A.3d 1042 (2011) (appellate court's role is narrowly circumscribed and "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions" (quoting *Md. Aviation Admin. v. Noland,* 386 Md. 556, 571, 873 A.2d 1145 (2005))). We "defer to the agency's fact-finding and drawing of inferences if they are supported by the record," *Bd. of Phys. Quality Assurance v. Banks,* 354 Md. 59, 68, 729 A.2d 376 (1999), and decide "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119 (1978) (quoting *Dickinson–Tidewater v. Supervisor,* 273 Md. 245, 256, 329 A.2d 18 (1974)); *see also Noland,* 386 Md. at 572, 873 A.2d 1145 (noting that a court's task is not to substitute its own judgment for that of an agency, reasoning that "the expertise of the agency in its own field should be respected"); *Salerian v. Md. State Bd. of Physicians,* 176 Md.App. 231, 246, 932 A.2d 1225 (2007). Agency decisions receive no special deference on questions of law, which we review *de novo. Talbot County v. Miles Point Property, LLC,* 415 Md. 372, 384, 2 A.3d 344 (2010) (citing *Belvoir Farms Homeowners Ass'n. v. North,* 355 Md. 259, 267, 734 A.2d 227 (1999)).

Our review of the Revocation Appeal differs slightly because of a procedural mistake on Dr. Roane's part. The trial court entered the Order Affirming Revocation on the docket (*i.e.,* it "entered judgment" per Rules 1–202 and 2–601) on March 29, 2012. Dr. Roane filed a Motion to Alter or Amend on April 12, 2012.[6] Rule 2–534 requires that a Motion to Alter or Amend be filed "within ten days after the judgment's entry" (counting weekends under Rule 1–203), in order to toll the period for filing a notice of appeal. *Unnamed Att'y v. Att'y Grievance Comm'n,* 303 Md. 473, 486, 494 A.2d 940 (1985).

---

6. Although Dr. Roane claims the Motion to Alter or Amend was "filed" on April 10, 2012, the date reflected on the Certificate of Service that he attached to the motion, the docket sheet states that it was filed on April 12, 2012. Either way, it was not filed within ten days after entry of judgment.

Day Ten after entry of Judgment was April 8, 2012—a Sunday—so the deadline for Dr. Roane to file within ten days fell on the next business day, Monday, April 9, 2012. His Motion to Alter or Amend filed on April 12, then, did not operate to toll his deadline, which in turn meant the deadline to appeal from the *underlying* decision ran on April 30, 2012. Md. Rule 8–202(a). But Dr. Roane waited until *after* the circuit court denied his Motion to Alter or Amend (coincidentally, on April 30) to file a Notice of Appeal, which he did on May 30.

▮ As such, Dr. Roane has not appealed from the circuit court's Order Affirming Revocation, but rather (and only) from the Order Denying the Motion to Alter or Amend. This means that we ask not whether the judge considering the Motion to Alter or Amend "would have reached the same conclusion" as the judge who ruled on the underlying motion,

> but only whether that conclusion was so manifestly wrong and unjust that failure on his part to vacate the award would constitute an abuse of the wide discretion that attaches to rulings denying motions to vacate existing judgments. . . . We have defined "abuse of discretion" in a variety of ways, all of them setting a very high threshold.

*Wilson–X v. Dep't of Human Res.*, 403 Md. 667, 677, 944 A.2d 509 (2008). So with respect to the Revocation Proceeding, we look not at the Board's Revocation Order, or even the circuit court's Order Affirming Revocation, but at the Order Denying the Motion to Alter or Amend to determine whether "no reasonable person would take the view adopted by the [trial] court." *Schade v. Md. State Bd. of Elections*, 401 Md. 1, 34, 930 A.2d 304 (2007) (quoting *Wilson v. John Crane, Inc.*, 385 Md. 185, 198, 867 A.2d 1077 (2005)).

### C. The Board Was Authorized To Pursue Summary Suspension And Revocation Simultaneously.

Dr. Roane contends that the Board improperly proceeded down two paths at the same time. He contends that the statute giving an agency authority to proceed with a suspension or revocation proceeding requires that the agency choose one of these two remedies, citing *Mullan* as supporting his

position. The Board disagrees, arguing that neither the applicable statute nor *Mullan* defines a revocation proceeding and a suspension proceeding as mutually exclusive remedies or requires the Board to choose.

Within the Administrative Procedure Act, SG § 10–226(c) provides for judicial review of the revocation or suspension of a license:

(1) Except as provided in paragraph (2) of this subsection, a unit may not revoke or suspend a license unless the unit first gives the licensee:

(i) written notice of the facts that warrant suspension or revocation; and

(ii) an opportunity to be heard.

(2) A unit may order summarily the suspension of a license if the unit:

(i) finds that the public health, safety, or welfare imperatively requires emergency action; and

(ii) promptly gives the licensee:

1. written notice of the suspension, the finding, and the reasons that support the finding; and

2. an opportunity to be heard.

SG § 10–226(c). We see nothing in the language of the statute or in *Mullan* that remotely suggests that the Board was required to pick one remedy to the exclusion of the other.[7]

*Mullan* involved the suspension of a physician's license after witnesses testified that he treated pediatric patients while under the influence of alcohol. 381 Md. at 162, 848 A.2d 642. The only question before the Court of Appeals was whether SG § 10–226(c) permitted emergency action by way of a summary suspension without first giving a licensee the oppor-

---

7. Although his argument is difficult to follow, Dr. Roane seems to contend that the Board incorrectly viewed HO § 14–404(a) as creating an additional procedural path to revocation. We don't read the Board as having relied on HO § 14–404(a) as a basis for proceeding, but rather, consistent with its title ("Denials, reprimands, probations, suspensions, and revocations—Grounds") and purpose, to define the grounds on which it could premise a suspension *or* revocation.

tunity to be heard, when a suspension was required to protect the "public health, safety, and welfare." The Court explained that under SG § 10–226(c), there are "two paths [available] to the licensing authority when it seeks to suspend *or* revoke a license." *Mullan,* 381 Md. at 165, 848 A.2d 642 (emphasis added). The *first* of these, pursuant to SG § 10–226(c)(1), requires written notice and the opportunity to be heard before the effective date of a suspension or revocation. The *second,* on the other hand, under SG § 10–226(c)(2), empowers the Board to exercise its discretion and issue an emergency summary suspension as long as, *within that order,* it gives the licensee prompt notice and an opportunity to be heard. *See Mullan,* 381 Md. at 167–68, 848 A.2d 642. The Court looked specifically at the timing of the summary suspension proceeding under the latter section, and the "two paths" to which it referred were merely two alternative paths to suspension based upon the presence or absence of a risk to the public. Nowhere did the Court suggest that the "two paths" referenced were the mutually exclusive choices of suspension on the one hand, and revocation on the other.

The Board also points out that even within the facts of *Mullan,* there was a separate appellate proceeding in which Dr. Mullan's license was revoked as well. *See Mullan v. Bd. of Physician Quality Assurance,* No. 1598, Sept. Term, 2002 (Md.App. June 9, 2004). Although the *substance* of unpublished decisions of this Court may not be relied upon or even referred to as precedent, *see* Md. Rule 1–104, the *fact* of the unreported *Mullan* decision demonstrates that a revocation case proceeded simultaneously with a suspension case in the very instance that Dr. Roane purports to use to show only one can take place at a time.

█ The procedures laid out for summary suspension appear to be more specific than those for revocation, even though the remedy is less drastic, likely because of the need for urgency in the decision-making process. (If you're going to suspend someone's livelihood immediately, even if temporarily, you must show with specificity an endangerment to the

"public health, safety, or welfare," much like an applicant for a temporary restraining order has to show that it "clearly appears from specific facts shown by affidavit or other statement under oath that immediate, substantial, and irreparable harm will result ... before a full adversary hearing can be held on the propriety of a preliminary or final injunction." Md. Rule 15–504(a).) And the effects of the two procedures are different: summary suspension stops a practice *immediately* and revocation ends it *permanently*. But the fact that SG § 10–226(c)(2) provides a separate procedure for a summary suspension in no way suggests that it provides an exclusive remedy, and Dr. Roane cites no other authority suggesting this to be the case. *Cf. Rosov v. Md. State Bd. of Dental Exam'rs*, 163 Md.App. 98, 877 A.2d 1111 (2005) (summarily suspending and then later revoking dentist's license based on improper conduct).

### D. The Decision To Revoke Dr. Roane's License Was Proper.

We review next whether the circuit court abused its discretion in declining to overturn its *prior* Order Affirming Revocation. The court's first decision hinged on a finding that Dr. Roane had waived both his argument that the Board's findings of fact were unsupported by substantial evidence and his argument that the Board acted arbitrarily or capriciously by delaying in going forward with the revocation. Dr. Roane argues here that he "has contested the factual evidence of this case throughout the proceedings," and that his continued denial of the patients' allegations preserved his right to contest the ALJ's findings as unsupported by substantial evidence at *any* stage of the proceeding. He also claims he did not waive his argument that the Board acted arbitrarily and capriciously in continuing its investigation for seven years before it took any action, because he had raised this argument in the Suspension Proceeding; in his view, raising the argument in one proceeding preserved it in the other as well.

### 1. Dr. Roane Waived The Right To Challenge The Board's Findings Of Fact, Which Were Supported By Substantial Evidence In Any Event.

 The Board adopted the ALJ's proposed Findings of Fact and Discussion when it incorporated them by reference in the Revocation Order. When Dr. Roane petitioned for review in the circuit court, he claimed for the first time in his reply memorandum that the Board's findings were not supported by substantial evidence. Although the circuit court permitted the filing of the reply over the Board's objection, the court then decided that Dr. Roane had not contested the factual findings prior to the circuit court review action, and therefore had waived the right to contest them. Since neither the circuit court nor we consider arguments not raised before the agency, *see Bd. of Physician Quality Assurance v. Levitsky*, 353 Md. 188, 208, 725 A.2d 1027 (1999) (questions "that could have been but were not presented to the administrative agency may not ordinarily be raised for the first time in an action for judicial review"); *Capital Commercial Props., Inc. v. Montgomery Cnty. Planning Bd.*, 158 Md.App. 88, 96, 854 A.2d 283 (2004) ("[A]ppellate review of an administrative decision is limited to those issues and concerns raised before the administrative agency."), we must determine what Dr. Roane properly raised.

On the face of the exceptions Dr. Roane filed with the Board in the Revocation Proceeding, it appears that he raised only the legal argument we just rejected in the last section. His exceptions filing contained only the following two paragraphs:

1. That on or about August 26, 2010 [Dr. Roane] filed Motion to Dismiss [sic] and these proceedings should have been dismissed for the reasons set forth in the attached Motion.

2. That all the evidence presented at the hearing in the above case on October 25, 2010 was the exact same evidence that submitted [sic] to the [Suspension Hearing] on June 7, 2010. This evidence included the full evidentiary transcript from the June 7, 2010 hearing as well as all of the exhibits

submitted at the June 7, 2010 hearing. That this provides further support, with respect to the Motion to Dismiss, that these hearings should have never gone forward and that this matter should be handled pursuant to the Summary Suspension meetings which are currently pending before the Board of Review of the Department of Health and Mental Hygiene.

The "August 26, 2010 Motion to Dismiss" is not contained in the record (of either case). We can, however, glean from the Board's Motion to Strike Dr. Roane's Reply, which is in the record, that this Motion to Dismiss was "filed prior to the ALJ hearing," and thus could not have contested the ALJ's factual conclusions (which had not yet been made). And timing aside, the language of the exceptions themselves refers only to Dr. Roane's legal argument that the Board lacked authority to revoke his license because the Board already had sought to suspend it.

Dr. Roane responds by arguing that the ALJ's decision to allow the parties to incorporate the testimony and exhibits from the Suspension Proceeding into the Revocation Proceeding similarly "incorporated" exceptions and legal arguments from that case as well. He also claims that his counsel's arguments at the hearing before the ALJ on October 25, 2010 "clearly indicated that the evidence was not substantial enough to find that Dr. Roane's revocation should be upheld," citing a number of counsel's arguments at that time. The record from the Revocation Proceeding hearing demonstrates otherwise.

Rather than reprising their live witness presentations from the Suspension Proceeding, the parties agreed to import the factual presentation from that earlier hearing into the record in the Revocation Proceeding. The ALJ accepted the stipulation and memorialized its scope on the record:

[There was] a hearing that apparently was conducted by a different [ALJ] on June 7, 2010. The parties were the same. There may be some dispute about this, but we don't need to dispute it here.

The issues were at least very similar, and it was decided at the telephone prehearing conference that the way that we would proceed in this matter is that the *transcript of the testimony* that was taken on June 7, 2010, *would, by stipulation, be the testimony that will be in the record in this matter and all the exhibits* that were admitted at the hearing on June 7, 2010, *will be the exhibits that are part of the record in this matter,* with possibly one exception. . . .

(Emphasis added.)

■ This "incorporation" failed, for two reasons, to preserve challenges to the ALJ's findings of fact. *First,* as reasonable and efficient as it may have been for the parties to stipulate to the importation and admission of testimony and evidence from the Suspension Hearing into the record of the Revocation Hearing, that agreement by its terms only included testimony and evidence. Whether or not parties properly can incorporate legal arguments from one proceeding into another, there was no such agreement in this case. The record points to the opposite conclusion: after accepting the stipulation, the ALJ heard oral argument from the parties *based on that record:* "Okay. Great. So that takes care of that. And so, then, what we are going to do today is *just hear oral arguments based on the record that now is before me.*" (Emphasis added.) At that point, and at the exceptions stage, Dr. Roane bore the burden of raising whatever issues he wanted to raise, and he can't shift to the ALJ the duty to read the opening and closing statements from the Suspension Hearing or to sift through motions or briefs in that proceeding to identify and address any arguments Dr. Roane might have made there.

■ *Second,* Dr. Roane's argument that he "disputed" the factual evidence at every stage of the proceeding confuses his opportunity to challenge the Board's factual allegations during the hearing, which he did, with his duty to challenge the ALJ's findings through exceptions before the Board entered a final decision, which he did not. The exceptions phase is important because it allows the Board to see exactly what part or parts

of the ALJ's decision a party is contesting. *See* SG § 10–216. Dr. Roane's sweeping reassertion of his view that Patients A and B were lying disputes the ALJ's relative allocation of credibility, but doesn't automatically raise a challenge to every inference or conclusion that the ALJ drew as a result of believing those witnesses. And his failure to specify errors left the Board without notice of or the opportunity to consider and correct any exceptions it might have found valid.

█ Even if we were to find that Dr. Roane had not waived his right to contest the Board's findings, he still would fail on the merits. Since we have only the circuit court's decision to deny Dr. Roane's Motion to Alter or Amend, we would need to find that the circuit court "act[ed] 'without reference to any guiding rules or principles,'" that its ruling was "'clearly against the logic and effect of facts and inferences before the court,' or [was] 'violative of fact and logic.'" *Touzeau v. Deffinbaugh*, 394 Md. 654, 669, 907 A.2d 807 (2006) (quoting *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312, 701 A.2d 110 (1997) (citations omitted)). And on this record, there was more than substantial evidence supporting the Board's decision to revoke Dr. Roane's license. The ALJ in the underlying proceeding issued a twenty-page opinion that recounted in detail the testimony of both Patient A and Patient B and the numerous bases for his finding that Dr. Roane engaged in sexual misconduct with both:

First, the significant similarities between the testimony of Patient A and Patient B are reciprocally corroborative. Both Patients were born in 1960 and are twenty five years younger than [Dr. Roane]. Both women began treatment with [Dr. Roane] when they were very young—Patient A was fourteen years old, and Patient B was twenty-one years old. In addition, both Patients described meeting [Dr. Roane] in his office, after office hours, during which money or medication was exchanged for sex.

Second, the record does not support an ulterior motive for either Patient A or Patient B to make up their testimony. Although Patient A acknowledged a long history of sexual

and physical assault and abuse that is well outside the mainstream, I am not persuaded that this history is untrue or provides sufficient reason to not believe her testimony about [Dr. Roane]. In regard to Patient B, although [Dr. Roane] wrote a letter to a Disability Examiner in 1997 that did not support Patient B's application for disability status, there is no evidence that Patient B knew about the letter, let alone was angry about it.

Third, [Dr. Roane's] admissions partially supported Patient A's testimony. [He] admitted sexual activity with Patient A—sometime in the 1990s and in November 2000—during visits to her apartment. He also told Pfizer in January 2000 that Patient A had been "followed in this practice for more than twenty years." His post-hoc explanation that this was merely an "embellishment" is unconvincing. Furthermore, [Dr. Roane] admitted that he gave Patient A samples of insulin "sometime in the year 2000" and "[a]t some point" Zoloft and, significantly, that he had never done that for any one else after what he considered the doctor/patient relationship to have ended.

Fourth, [Dr. Roane] admitted that he had a personal or social relationship with Patient A after what he considered the doctor/patient relationship to have ended either a few weeks after Patient A's first visit sometime in 1974 or sometime in 1976. [Dr. Roane] first treated Patient A when she was fourteen years old. There is a twenty-five-year age difference between them. Although [Dr. Roane] did not indicate when the social relationship began—he admitted that he first visited at her apartment sometime in the 1990s—the motive to continue the sexual benefits of the relationship reasonably explains why he would continue the relationship.

Fifth, [Dr. Roane's] credibility is significantly undermined by the fact that he lied to the police[, whose] report contains the following: "[Dr. Roane] denied any sexual interaction with [Patient A.]" This blatant lie to a police officer during an official investigation indicates [Dr. Roane] will lie when he believes the truth is not in his interests.

As we have explained, "it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence." *Bd. of Phys. Quality Assurance v. Banks,* 354 Md. 59, 68, 729 A.2d 376 (1999) (quoting *CBS, Inc. v. Comptroller of the Treasury,* 319 Md. 687, 698, 575 A.2d 324 (1990)). Here, as in *Banks,* the testimony directly supported the administrative findings of fact, and even Dr. Roane's *admitted* behavior with Patient A, standing alone, could reasonably be viewed as constituting sexual misconduct with a patient. When viewed in combination with the testimony of both patients about the overtures and exchanges initiated by Dr. Roane, there is overwhelming support for a finding not just of sexual misconduct but, as the ALJ put it, his exploitation "of the vulnerabilities of two young women." We find more than substantial evidence on which the ALJ and in turn the Board, could and did find a violation of HO § 14–404(a)(3), and the circuit court did not abuse its discretion in declining to alter or amend its own decision to affirm the Board's revocation of Dr. Roane's license.

## 2. Dr. Roane Waived The Right To Challenge The Revocation As Arbitrary And Capricious.

Dr. Roane next attacks the decision to revoke his license as arbitrary and capricious, based upon the length of the Board's investigation. The circuit court declined to consider it, reasoning that again, he did not properly raise this argument before the Board, and we agree. *First,* Dr. Roane again relies on the incorrect notion that raising an issue in one proceeding automatically preserves it in another. He admits in his brief in the Revocation Appeal that to the extent he raised the argument, he did so in the Suspension Proceeding. He rehashes his "incorporation" argument about the evidence brought before the ALJ, and refers casually to that case:

As can be seen in the [Suspension Proceeding], the [Board] has always been well aware of the arbitrary and capricious argument, and that the length of time is to be considered in ruling on whether or not the Board did in fact act arbitrarily or capriciously. This is not a new argument being raised

for the first time. The agency has had time to examine and consider this argument and has indeed considered this argument in the [Suspension Proceeding].

■ Although the Board obviously was aware of the Suspension Proceeding—the Board instituted it—the two proceedings ran in parallel, before different ALJs, and on different schedules. Dr. Roane raised the "arbitrary and capricious" argument as an exception to the ALJ's finding in the Suspension Proceeding, but he didn't file exceptions in the Revocation Proceeding until seven months later and didn't include the argument there. Dr. Roane would have us require the Board to recall and consider an argument made months before in another case that is not mentioned in his exceptions. But we already have rejected the argument that a party can simply "incorporate" arguments and assume the presiding body in one proceeding takes notice of all that occurred in another proceeding. As such, Dr. Roane's failure to raise the "arbitrary and capricious" argument until he reached the circuit court means he failed to preserve it for our review. *See Shirazi v. Md. State Bd. of Physicians,* 199 Md.App. 469, 478–79, 23 A.3d 269 (2011) (arguments raised for the first time at the circuit court level in administrative proceeding are not preserved for appellate review).

■ *Second,* Dr. Roane's argument about excessive delay in the Suspension Proceeding doesn't carry over from the Suspension Proceeding to the Revocation Proceeding as a matter of logic, even assuming he preserved it. Nor should it, since the purposes of the two proceedings are different. The purpose of a summary suspension—immediate protection of the public safety—addresses an exigency not present in a revocation proceeding, whereas a revocation focuses on permanence. *Compare Mullan,* 381 Md. at 163, 848 A.2d 642 (the only statutory requirement for summary suspension is "a threat to the public health, safety, or welfare, measured at the time the decision to suspend summarily is made") *with Shirazi,* 199 Md.App. at 483, 23 A.3d 269 (affirming Board's revoca-

tion of doctor's license based on sexual assault of four female patients over two years as "supported by competent, material and substantial evidence").

In the Suspension Proceeding, Dr. Roane invoked the provision of COMAR that addresses procedure in a suspension hearing, and that requires the Board to "show by a preponderance of the evidence that the health, welfare and safety of the public imperatively requires the Board to issue an order to suspend the license." Md.Code Regs. 10.32.02.05(F)(2) (2013). He argued in his Memorandum in Opposition to the ALJ's decision that the Board had not shown why *suspension* was imperatively required, and that the delay was, accordingly, arbitrary and capricious. But that argument does not carry over to the Revocation Proceeding, where there was no similar exigency, and it ignores the important policy distinctions between the two proceedings.

### E. The Decision To Suspend Dr. Roane's License Is Moot.

In the face of our decision in the Revocation Appeal to affirm the circuit court's decision, Dr. Roane argues in the Suspension Appeal that the Board acted arbitrarily and capriciously and that its decision was not supported by substantial evidence. We decline to address those arguments because we agree with the Board that his challenge is moot.

"A case is moot when there is no longer any existing controversy when the case comes before the Court or when there is no longer an effective remedy the Court could grant." *Suter v. Stuckey,* 402 Md. 211, 219, 935 A.2d 731 (2007); *see also Dep't of Human Res. v. Roth,* 398 Md. 137, 143, 919 A.2d 1217 (2007) (no controversy between the parties when agency has resolved the issue). Because we affirm the revocation of Dr. Roane's license altogether, an opinion rendering any decision regarding the Suspension Order would be purely an advisory opinion. And we disagree with Dr. Roane that the Suspension Appeal remains live, even after his license has been revoked, because it remains improperly on his rec-

ord. As we have explained, the two proceedings spring from the same operative set of facts, and the fact that his license was revoked based on his opprobrious conduct overshadows (or, differently put, properly absorbs) the suspension. Moreover, Dr. Roane has pointed to no law under the Administrative Procedure Act or elsewhere that suggests such an academic exercise would be appropriate.

ORDER OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IN APPEAL NO. 542, SEPTEMBER TERM 2012, AFFIRMED; APPEAL NO. 271, SEPTEMBER TERM 2012, DISMISSED AS MOOT. COSTS TO BE PAID BY APPELLANT.